## SMITH v. DETROIT & D. GOLD MIN. CO, *et al.*

1. An agreement for the purchase of mining claims stipulated that, if adverse claims were established to any portion of the land embraced in the agreement, the price would be reduced pro rata. The purchaser at the time of securing the option knew that title to portions of the land was in dispute. The seller claimed to own all the land included in the agreement, but some ground was subsequently adjudged to be the property of another. The agreement also made mistakes in the boundries of certain lodes. Held, that the purchaser was not entitled to rescind the agreement.

2.  Under Rev. Civ. Code 1903, § 1285, requiring a party, in order to accomplish a rescision of a contract, to act promptly on discovering the facts entitling him to rescind, a purchaser under an option agreement, if entitled to rescind because the title to a portion of the land had been adjudged to be in a third person, lost his right to rescind by his failure to offer to do so for about 15 months after discovering that such portion belonged to the third person.

3.  An agreement for the purchase of a mining claim cannot be rescinded, after the selling price has greatly depreciated, by demonstrating its unproductiveness, as the purchaser cannot then restore to the seller everything of value which he received.

4.  The word "improvements," in an agreement for the sale of mining claims, which stipulated that, if the purchaser failed to perform his agreements, the improvements should become the property of the seller, as rent for the occupation of the premises by the purchaser, and as damages sustained by reason of a breach of the contract, includes removable betterments placed on the land by the purchaser, and which he might in the absence of an agreement to the contrary, take away.

5.  Under Rev. Civ. Code 1903, § 1275, providing that parties to a contract may agree on the amount of the damages sustained by a breach thereof, when, from the nature of the case, it would be difficult to fix the actual damage, the parties to an agreement for the purchase of mining claims may agree on the amount of damages that a breach thereof would occasion.

    CORSON, J., dissenting.

(Opinion filed Nov. 11., 1903.)

Appeal from circuit court, Lawrence county. Hon JOSEPH B. MOORE, Judge.

Action by Patrick H. Smith against the Detroit & Deadwood Gold Mining Company and others. From a judgment for plaintiff, defendants appeal. Affirmed.

*Martin & Mason*, for appellants.

FULLER, J.  Upon all the testimony offered at the trial of this action to recover the possession of certain articles of mining ma-

chinery and equipments, with damages for their wrongful removal
and detention, the court determined, as a matter of law, that
plaintiff was entitled to recover the property described in his
complaint, or its value in case a return could not be had, to-
gether with such damages as the jury might find established
by a fair preponderance of the evidence. Unless it was error
to overrule the defendant's motion for the direction of a ver-
dict, and charge that plaintiff was entitled to the posses-
sion of the property at the commencement of the action, the
instructions of the court relative to the question of damages
furnish no just ground for complaint.

The determination of this appeal from a judgment in favor
of respondent, and an order denying a motion for a new trial,
requires the construction of a contract by which appellants
were given the option to purchase certain mining interests and
claims situated in the Two Bit mining district, of Lawrence
county. On the 21st day of February, 1898, when respondent
deposited his deed in escrow, and appellants paid $5,000 and
went into possession pursuant to the option agreement, consid-
erable excitement prevailed in that district concerning the dis-
covery of gold, and appellants agreed to prosecute the work of
sinking a shaft to quartzite with all possible dispatch, and, in
case ore was not struck when quartzite was reached, they
agreed to run drifts from the bottom of the shaft in order to
obtain ore as soon as possible. On full compliance with their
agreement, and the receipt of $45,000 in addition to the $5,000
paid respondent for the option, the deed deposited in escrow
was to be delivered to appellants. It was further provided
that "in case said parties of the second part shall fail to carry
out any of the conditions of this option at the time they become

due respectively, then this option shall cease and determine, and the deed so deposited is to be delivered back to said party of the first part. In case said parties of the second part shall fail to carry out the covenants and agreements of this option, and shall have made any payments thereon, said payments and improvements shall become the property of said party of the first part as rent for the occupation of the premises during the time that the party of the second part may be in possession thereof, and as the damages which said party of the first part may sustain by reason of a breach of this contract are difficult of estimation, said sums are agreed upon as damages and as rent for the said premises."

Appellants knew when they secured the option to purchase this unpatented property that the title to portions of it was in dispute, and it is clear that respondent claimed to own and included in the agreement some ground that was afterward adjudged to be the property of another. As a means of adjustment, and to save appellants "harmless from all loss and damages arising from any such adverses and controversy," the following provision was inserted in the contract: "In case adverse claims are successfully established to any portion of the ground above set forth, or in case said party of the first part shall compromise any adverse claim or controversy, said party of the first part covenants and agrees that said balance due of forty-five thousand ($45,000) dollars may be reduced at the rate of four hundred and fifty ($450) dollars per acre for all ground which he may lose by reason of any such adverse litigation or compromise." When appellants had sunk a shaft to quartzite and drifted therefrom 361 feet east and 374 feet west, without discovering any ore, they attempted to rescind the option agree-

ment, after first secretly severing and removing from the premises the machinery and implements employed in the business, and described in the complaint as follows: "Two boilers, $200 each; one hoisting engine, $600; one air compressor, $600; two air drills, $175; piping and fittings for said air drills, $200; one electric light plant, fittings, and machinery, $600; one station pump and fittings, $600; one sinking pump and fittings, $400; one air drum, $75; one hoisting cage, $75; thirteen hundred feet of iron track; $200; miscellaneous lot of drills, tools, and other personal property belonging to the Ground Hog claim, and used at the hoist thereon, $200."

The reasons for rescission stated in the notice, and urged by counsel for appellants, are "mistake and misrepresentations of material facts concerning the said properties, and the extent, situation and boundaries of the same, relying upon which representations the undersigned were induced to enter into the said alleged contract, and to make extensive expenditures in connection therewith, and also by reason of failure of the consideration of the said alleged contract in material respects."

Appellants were not only aware at the time of making the contract that some controversy had arisen with reference to conflicting claims, but it actually knew for about one year and three months before it offered to rescind that the title to a portion of the property had failed. It would do violence to the terms of this option agreement, were we to assume that facts justifying rescission ever existed; and, if such there were, the right was lost by appellants inexcusable delay. Section 1285, Rev. Civ. Code 1903. Granting that the mistake as to the boundaries of certain lodes was an essential inducement of the option agreement, recission is prevented by the stipulation

17 S. D.—27

that $450 per acre be deducted from the balance to be paid, should appellants elect to purchase the property, and the undisputed evidence shows such amount to be more than ample compensation for all ground for which an adverse claim was established. As the value of these mining locations depended upon the contingency of finding gold in paying quantities, the $5,000 was paid for the mere chance to win large profits, and the option to purchase the property should the venture prove successful.

The contract cannot be rescinded for the further reason that the selling price of the property was greatly depreciated by demonstrating its unproductiveness, and the abandonment of undisturbed possession at so late a time cannot restore to respondent everything of value which appellant received.

There is no merit in the contention that the shaft and drifts are the improvements which it was stipulated should be retained by respondent as rent for the occupation of the property during the time appellants might continue in possession, and as damages arising from a breach of the contract to purchase. At the termination of appellants' estate by their failure to perform the conditions of the option, such holes in the ground would of necessity revert with the land to respondent, and it was never the intention to regard anything of that character as an improvement. The parties had reference to removable betterments, which, in the absence of an agreement to the contrary, might be taken away. At page 66 of 16 Am. & Eng. Encyc. of Law, the author appends the following note to his definition of the term "Improvements": "It would be difficult to select a more comprehensive word, and, where the parties say that all improvements which may be placed on the

premises shall belong to the lessor, it is difficult to say what, if anything, would be excluded." At the time the option was obtained and appellants went into possession, there was great activity in the Two Bit mining district, and the market for mining ground was good, but since that time development work and sales have ceased. In fact, there was but one shaft in operation when appellants abandoned their undertaking, and surreptitiously removed the property to recover which this action was instituted. Mining propositions being usually more or less hazardous, and the value of undeveloped lodes speculative. it would be extremely difficult to ascertain the actual detriment caused by a breach of such a contract as this, and for that reason the parties could anticipate and lawfully agree upon the amount of damages that a breach thereof would occasion. Section 1275, Rev. Civ. Code 1903; Barnes v. Clement, 8 S. D. 421, 66 N. W. 810.

Without the aid of a brief on the part of respondent, we have carefully examined every point urged as error, and find nothing for which the case should be reversed. The judgment appealed from is therefore affirmed.

Corson, J. (dissenting). I am unable to concur with the majority of the court in its opinion in this case, and will briefly state my reasons for dissenting therefrom.

The defendants, in their answer, as one defense, allege that the plaintiff made certain material representations in regard to the boundaries and ownership of the mining ground described in the contract, and that they relied upon said representations, and, but for the same, would not have entered into the contract for the purchase of the property, and that said

representations were untrue, and that they therefore rescinded the contract.    These allegations were proven by uncontradicted evidence.    The majority of the court, in its opinion, takes the view that as there was a stipulation in the contract, providing that, in case the title of the plaintiff to any of the mining ground described in the contract should fail, there might be a reduction of $450 per acre, for so much of the ground as might be lost, the defendants must rely entirely upon the contract, and were not entitled to rescind.    This seems to me an erroneous view.    If there were material misrepresentations as to the boundaries and ownership of the mining property, by which the defendants were induced to enter into the contract, they were, in my judgment, entitled to rescind the same, notwithstanding the stipulations referred to, as they were entitled to the mining ground substantially as represented by the plaintiff, whether the misrepresentations on his part were fraudulently made or made by mistake.    Section 1283 of the Revised Civil Code of 1903 provides:    "A party to a contract may rescind the same in the following cases:    (1) If the consent of the party rescinding or any party jointly connected with him was given by mistake or obtained through duress, menace, fraud. *  *  *  (4) If such consideration, before it is rendered to him, fails in any material respect from any cause."    And section 1284 provides:    "A stipulation that errors of description shall not avoid a contract, or shall be the subject of compensation, or both, does not take away the right of recision for fraud nor for mistake, where such a mistake is in a matter essential to the inducement of the contract, and is not capable of exact and entire compensation."    It will thus be seen that a party to a contract may rescind the same when his consent thereto was given

by mistake or obtained by fraud, or if the consideration, before it is rendered to him, fails in a material respect. And it will be further observed that errors of description will avoid a contract, notwithstanding the stipulation contained therein, where there is fraud or mistake, and such mistake is in a matter essential to the inducement of the contract, and is not capable of exact and entire compensation.

It appears from the undisputed evidence that the northerly boundary of three of the claims in which the plaintiff had a one half interest, which were represented by the plaintiff as being bounded by a barbed-wire fence, was from four to six hundred feet southerly therefrom, and that these claims overlapped two other claims, on one of which the defendants erected their hoisting works and sunk their shaft, and which were represented by the plaintiff as being his sole property, and were free from all adverse claims. Clearly, the fraud or mistake as to several acres of mining ground, including a one-half interest in the ground upon which the defendants had erected their hoisting machinery, constituted material representations, and such as were not capable of exact and entire compensation. It may be laid down as a general rule that, when parties to a contract for the purchase of real property make representations as to the boundaries of the same, which are material and constitute the inducement for the making of the contract, the buyer is entitled to rescind if the boundaries are not as represented. In Bigham v. Madison, 103 Tenn. 358; 52 S. W. 1074, 47 L. R. A. 267, the Supreme Court of Tennessee held: "Where, on a sale of land, the boundaries are pointed out, and the parties are mutually and honestly mistaken as to their location, and such mistake is material, and the vendee fails to get the land he in-

tended to buy, and which the vendor thought he was selling and had a right to sell, the vendee will be entitled to a recision.'' When, therefore, the defendants discovered the falsity of the representations of the plaintiff as to the boundaries and ownership of these claims, they were clearly entitled to rescind the contract, notwithstanding the stipulations therein.

It is further stated in the majority opinion that the defendants were not entitled to rescind for the reason that there was too long a delay in asserting their rights, but, in my judgment, the delay was not unreasonable, in view of the circumstances disclosed by the evidence, and the court would have been justified in so ruling as a matter of law.

The position is further taken in the majority opinion that the defendants could not restore to the plaintiff everything of value which they had received from him, by reason of the depreciation in the value of the property. If, however, the property was restored, the fact that it had depreciated in value could not affect that right. In the quite recent case of Snow v. Alley, 144 Mass. 546, 11 N. E. 764, 59 Am. Rep. 119, the Supreme Court of Massachusetts, in discussing this subject, says: ''The right to rescind or avoid a contract proceeds upon the ground that a party has been fraudulently betrayed into making it, and, having thus been induced to part with his own property, may resume possession of it on returning that which he has himself received, and thus placing the other party in the same position that he was before the contract was made. If that which he returns is diminished in value by natural causes, or in the ordinary or proper use of it, he may still return it, as in such case, the contract being rescinded, such diminution is the loss of the original owner.'' And in Goodrich v. Lathrop,

94 Cal. 56, 29 Pac. 329, 28 Am. St. Rep. 91, the Supreme Court of California says: "Section 3407 of the Civil Code provides: 'Rescision cannot be adjudged for mere mistake, unless the party against whom it is adjudged can be restored to substantially the same position as if the contract had not been made.' The words 'same position,' found in the section, are used with reference to the subject-matter of the contract, and the fact that the market value of the property may have depreciated while out of the possession of the vendor does not defeat the vendee's right of rescision. If the property can be returned by the vendee in substantially the same condition as when he received it, then the requirements of this section of the Code are fully satisfied."

If I am correct in the opinion that the defendants had the right to rescind the contract, then they were entitled to remove all the machinery and improvements made by them upon the property capable of removal, and the tools and implements belonging to them, notwithstanding the stipulations in the contract, for when the contract was rescinded all the stipulations therein were necessarily rescinded, also. As we have seen, by reason of the falsity of the representations made by the plaintiff, by which they were induced to enter into the contract, they were not only deprived of a very large portion of the mining ground described in the contract, but also of a one-half interest in the hoisting works erected by them, and in the shaft and drifts excavated by them. Certainly, under these circumstances, it would be manifestly unjust to give the improvements made by the defendants to the plaintiff, who had made the misrepresentations.

Holding these views, I am clearly of the opinion that a new trial should be granted.