## Rogers *et al. versus* Gilinger *et al.*

The fragments of a building, blown down by a tempest, are not thereby converted into *personalty*, but pass to the purchaser of the *realty*, at a sheriff's sale.

ERROR to the Common Pleas of *Bucks county.*

This was an action of trover, brought in the court below, by William T. Rogers and Paul Applebach, assignees of William Beek, against Philip Gilinger, Samuel Groff, Matthew H. Crawford, and Henry C. Hill; in which the parties agreed upon the following statement of facts, to be submitted for the opinion of the court, and considered in the nature of a special verdict. The decision to be upon the merits of the case, without regard to form, and either party to have a right to sue out a writ of error.

"William Beek was the owner in fee, of a tract of land in Doylestown township, Bucks county, upon which was erected a large frame building, on stone foundations, designed to be used for the purposes of agricultural and other exhibitions. By deed dated the 26th of October 1856, recorded the same day in the recorder's office of said county, in Miscellaneous Book No. 11, page 149, he assigned all his property (including the above) to the plaintiffs in trust for the benefit of his creditors.

"On the 28th of the same month, the building was blown down by a storm of wind. The foundations and floor were left nearly entire, but the whole building above the floor was a complete wreck,

[Rogers *et al. v.* Gilinger *et al.*]

severed from its supports and broken up, so that it could not be replaced, or the materials be used in the construction of a similar building.

"Subsequently the sheriff levied upon the land, by virtue of an execution against Beek, issued on a judgment entered previously to the date of the assignment, and sold and conveyed the same to the defendants. The ruins of the building, at the time of sale, were in the same condition as immediately after it was blown down. The defendants took possession of the property, sold the ruins of the building and received the proceeds to their own use. The plaintiffs duly notified the defendants, that they claimed such parts of the building as were severed from the foundations, as personal property, and brought this action to recover damages for the taking of the same.

"The property was described in the advertisement by the sheriff, on the *ven. ex.* as containing about 28 acres of land, and that the improvements consisted of the wreck of the large exhibition house and all its materials—the foundations, joists, and floor of the building being good, and more than one-half of the doors, windows, roofing, and timbers could be used for the purpose of erecting another building of the kind. The property as advertised was struck off to the defendants for $6000. The defendants afterward applied to the court for a rule to show cause why the sale should not be set aside, and they relieved from their bid, on the ground of the uncertainty whether the said wreck and materials passed to them as purchasers at sheriff's sale, as part of the real estate—and the court refused to grant the relief requested and confirmed the sale.

"The *ven. ex.*, return, and proceedings to set aside the sale, are considered as a part of this case.

"If the court should be of opinion that the parts of the building severed from the foundations were personal property, then judgment to be entered in favour of the plaintiffs for the sum of $698, with interest from June 21st, 1856, but should the court not be of such opinion, then judgment to be entered in favour of defendants."

The court below (SMYSER, P. J.) entered judgment in favour of the defendants. Whereupon the plaintiffs sued out this writ of error.

*Watson*, for plaintiffs in error, cited Mitchell *v.* Freedley, 10 *Barr* 198; Heaton *v.* Findlay, 2 *Jones* 304; 1 *Cruise* 46; Ross's Appeal, 9 *Barr* 491; Vorhiss *v.* Freeman, 2 *W. & S.* 116; Pyle *v.* Pennock, *Id.* 390; Harlan *v.* Harlan, 3 *Harris* 507; Cresson *v.* Stout, 17 *Johns.* 116.

*C. E.* and *J. L. Dubois*, for defendants in error.—2 *Bl. Com.*

[Rogers *et al. v.* Gilinger *et al.*]

18, 19; Shean *v.* Rickie, 5 *M. & W.* 171; Avery *v.* Cheslin, 3 *Ad. & Ellis* 75; Dearden *v.* Evans, 5 *M. & W.* 12; Goodrich *v.* Jones, 2 *Hill* 142; Cumming's Appeal, 11 *Harris* 509–15.

The opinion of the court was delivered by

STRONG, J.—The owner of a lot of ground upon which had been erected a large frame building, conveyed the property to assignees in trust for the benefit of creditors. Prior to the assignment, a judgment had been recovered against the assignor, which was a lien upon the real estate conveyed. Two days after the assignment had been made, a storm of wind demolished the building, leaving the foundation and floors nearly entire, but breaking the superstructure so that its materials could not be replaced, or used in the construction of a similar building. While in this condition, the whole was levied upon and sold under executions founded upon the judgment against the assignor, and the voluntary assignees now claim that the ruins of the frame building did not pass at the sheriff's sale; that they were personal property, and that the purchaser under the *venditioni exponas* having used them, is responsible to the assignees in an action of *trover.*

It may be *premised* that the assignees stand precisely in the shoes of Beek the first owner. If he could not assert against the purchaser at sheriff's sale, supposing no assignment had been made, that the fragments of the building were personalty, neither can they. It may also be remarked that the purchaser under the judgment has obtained all upon which the judgment was a lien.

Now clearly Beek, the first owner, could not have torn down the building, and converted the materials from realty into personalty, without diminishing the security of the judgment, impairing its lien, and wronging the judgment-creditor. Though the statutory writ of *estrepement* might not have been demandable until after levy and condemnation of the property, yet equity would have enjoined against any such wrong. The building, as such, constituted a large part of the creditor's security, and his lien embraced every board and rafter which made a constituent part of the structure. Nor were the rights of the assignees any more extensive. They were mere volunteers. They took the property as land only, encumbered as a whole, and in every part, by the lien of the judgment. Their title was in one sense subordinate to the right of the judgment-creditor to take all which passed to them in satisfaction of his debt.

In Herlakenden's Case, 4 *Rep.* 62 *a,* it was resolved that if a lessee pulls down a house, the lessor may take the timber as a thing which was parcel of his inheritance. So in Bowles's Case, 11 *Rep.* 81 *b,* it was held that if the lessee cut down timber, the lessor may take it. Though *severed,* it is a parcel of the inheritance.

[Rogers *et al. v.* Gilinger *et al.*] ₀

Nor will the *tortious* act of a stranger be allowed to injure the reversion: 2 *M. & S.* 494; 1 *Term Rep.* 55; Garth *v.* Sir John Cotton, 1 *Vesey, Sr.* 524. These principles are reasserted in Shult *v.* Barker, 12 *S. & R.* 272; 7 *Conn.* 232; 3 *Wendell* 104. Nor will a severance by the owner of that which was a part of the realty, unless the severance be with the intent to change the character of the thing severed, and convert it into personalty, prevent its passing with the land to a grantee. Thus it was held in Goodrich *v.* Jones, 2 *Hill* 142, that fencing materials on a farm which have been used as part of the fences, but are temporarily detached without any intent to divert them from their use as such, are a part of the freehold, and as such pass by a conveyance of the farm to a purchaser.

Is the rule different when the severance occurs not by a *tortious* act, nor by a rightful exercise of proprietorship, without any intent to divert the thing severed from its original use, but by the act of God? The act of God, it is said, shall prejudice no one, 4 *Co.* 86 *b*, yet the maxim is not true if a tempest be permitted to take away the security of a lien-creditor, and transfer that which was his to the debtor or the debtor's assignees. If trees are prostrated "*per vim venti*," they belong to the owner of the inheritance, not to the lessee: Herlakenden's Case, *ut supra*. He takes them as a part of the realty. True, he may elect to consider them as personalty, and this he does when he brings trover for their conversion, but until such election they belong to him as a parcel of the inheritance. If a tenant hold "without impeachment of waste," the property in the timber is in him; but if there be no such clause in his lease, and he remove from the land trees blown down, such removal is waste. That could not however be, unless, notwithstanding the severance, they continue part of the realty, for waste is an injury to the realty.

I am aware that it is said to have been held that if an appletree be blown down, and the tenant *cut* it, it is no waste: 2 *Rolle Abr.* 820. That may well be, for the falling of the tree is through the act of God, not of the tenant, and the *cutting* of the fallen timber is but an exercise of the tenant's right to estovers; but if he remove from the land *fallen* timber, it has been ruled to be waste.

What then is the *criterion* by which we are to determine whether that which was once a part of the realty has become personalty on being detached? Not capability of restoration to the former connexion with the freehold, as is contended, for the tree prostrated by the tempest is incapable of reannexation to the soil, and yet remains realty. The true rule would rather seem to be, that which was real shall continue real until the owner of the freehold shall by his election give it a different character. In *Shepherd's Touchstone* 90, it is laid down that "that which is parcel, or of the essence

[Rogers *et al. v.* Gilinger *et al.*]

of the thing, although at the time of the grant it be actually severed from it, does pass by a grant of the thing itself. And therefore by the grant of a mill, the mill-stone doth pass, although at the time of the grant it be actually severed from the mill. So by the grant of a house, the doors, windows, locks, and keys do pass as parcel thereof, although at the time of the grant they be actually severed from it."

It must be admitted that the case before us is one almost of the first impression. Very little assistance can be derived from past judicial decision. There is supposed to be some analogy between the character of these fragments of the building and that of a displaced fixture. The analogy, however, if any, is very slight. These broken materials never were fixtures, though they had been fixed to the land. They had been as much land as the soil on which they rested. Severance had never been contemplated. One of the best definitions of fixtures is that found in Shean *v.* Rickie, 5 *Mees. & W.* 171. They are those personal chattels which have been annexed to the freehold, but which are removable at the will of the person who has annexed them, or his personal representatives, though the property in the freehold may have passed to other persons. Yet, even fixtures, which but imperfectly partake of the character of realty, go to the purchaser at sheriff's sale of the land, though they have been severed tortiously, or by the act of God. Thus where a copper-kettle had been detached from its site in a brewery by one not the owner, had remained detached for a long period, and while thus severed, had been pledged by the personal representatives of the owner, it was still held to have passed by a sheriff's sale of the brewery under a mechanics' lien, filed before the severance: Gray *v.* Holdship, 17 *S. & R.* 413.

Without however discussing the question further, it will be perceived that in our opinion the broken materials of the fallen building must be considered as a parcel of the realty as between the assignees and the purchaser at sheriff's sale, and consequently that they passed by the sale to the purchaser.

The judgment is affirmed.