[No. 15039.   Department Two.   May 9, 1919.]

J. A. SIEGLOCH *et al.*, *Plaintiffs*, v. IROQUOIS MINING
COMPANY, *Defendant*; C. E. BISBEE, *Receiver*,
*Appellant*; ELIZABETH B. SLOCUM *et al*,
*Respondents and Cross-Appellants.*[1]

MINES AND MINERALS (16)—SALES—"IMPROVEMENTS." A contract
for the sale of mining claims, with forfeiture of all "improvements,"
placed thereon by the purchaser in case of default, includes a drill
press, tank, rails laid in place, and machinery attached to and an
improvement of the real property, the term "improvements" being
broader than "fixtures"; but does not include loose tools, equipment
and supplies, useful in the operation of the mine but in no sense
improvements of the realty.

SAME. A clause in a contract for the sale of mining claims on
the installment plan providing that in case of default, the purchaser
shall deliver up possession with all improvements placed thereon
by the purchaser, is not to be considered as a penalty and awarding
the improvements only so far as actual damages are shown; the
parties being *sui juris* and the contract not unreasonable and one
that was within their power to make.

Cross-appeals from a judgment of the superior
court for Spokane county, Blake, J., entered July 26,
1918, upon findings, upon trial of the title to mining
tools and property, in receivership proceedings, pur-
suant to stipulation of the parties. Affirmed.

*Danson, Williams & Danson,* for appellant receiver.

*Wentz & Bailey* and *Burcham & Blair,* for respond-
ents and cross-appellants.

FULLERTON, J.—On September 1, 1916, the respond-
ents, Slocum, Wulff, Watland, Owen and Wells, being
then the owners of certain mining claims situated in
Stevens county, contracted to sell the same to one
Van Horne. The purchase price of the property was
$20,000, and was to be paid in installments running

[1]Reported in 181 Pac. 51.

over a period of two years. Van Horne, shortly after the execution of the contract, assigned his interests therein to the Iroquois Mining Company, a corporation. The mining company immediately entered into possession of the property and proceeded to operate the same, running tunnels and sinking shafts therein, and placing thereon the various kinds of machinery and appliances usual and customary in the operation of mining property.

Neither Van Horne nor the mining company paid the installments becoming due on the purchase price, and an oral extension of time was given the purchaser at the end of the contract period; during which time the owners of the property, with the consent of Van Horne, negotiated with, and entered into a contract for the sale of the property to, the Iroquois Mining Company. This contract bore date of April 11, 1918. The purchase price agreed to be paid for the property in this contract was $30,000; it was likewise payable in installments, the first of which became due on April 30, 1918, and the last on September 1, 1919. The contract, together with deeds conveying the property, executed by the owners to the Iroquois Mining Company, were placed in escrow to be delivered to the mining company if it complied with the terms of the contract, and to be returned to the owners in the case of a noncompliance by it. The contract, among other conditions, contained the following:

"And the parties hereto do expressly agree that time is the essence of this contract, and in case of default by the party of the second part, its successors or assigns, in any of the conditions or covenants herein stipulated to be performed by it, in case said second party shall fail to make any of the payments above agreed to be made at the time and in the manner specified, or in case said second party shall make

default in any of the covenants and agreements above stipulated to be performed by it, then, and in that case this contract shall become void and of no further force and effect, and the party of the second part shall have forfeited all rights hereunder and any and all payments that have been made shall become forfeited to the parties of the first part, which said payments it is hereby agreed specially shall in that case be deemed as damages hereby liquidated for the nonperformance of this contract by said second party; and upon default of the party of the second part shall immediately deliver up possession of said mining claims to said first parties together with all improvements placed thereon by said second party.''

Shortly after the execution of the contract, the Iroquois Mining Company became involved in financial difficulties; a large judgment was obtained against it, and an action, entitled as of the present proceedings, was begun against it, in which a receiver of the property was appointed. The mining company did not pay the installments of the purchase price as they fell due, and the owners elected to forfeit the contract. They notified the mining company to that effect, and reentered into the possession of the property.

After his appointment, the receiver mentioned entered upon the mining property and proceeded to move therefrom the fixtures and improvements placed thereon by the mining company, whereupon the owners, appearing in the receiver action, set up a claim of ownership to the property and moved the court to stay the action of the receiver until their claim could be determined. The receiver, in opposition to the motion, took issue on the claim of ownership made by the owners, and set up ownership of the Iroquois Mining Company. The parties thereupon stipulated to try out the question of title, and a trial was entered

upon, resulting in a judgment from which both parties appeal.

The evidence disclosed that the property in dispute consisted of a drill press, a pressure tank, a Sullivan drill sharpener, a Delco light plant, four galvanized iron water tanks, about eighteen hundred feet of rails (railway) laid in place, about six hundred feet of three-inch pipe, about five hundred feet of one and one-half inch pipe, about five hundred feet of three-fourths inch pipe, which were more or less attached to the freehold, and a quantity of sundry loose mining tools, equipment and supplies, useful in the operation of the mine and its subsidiary activities, but in no sense improvements on the realty. The court found that the property specifically described was attached and annexed to the freehold; that it was placed thereon by the mining company with the intent of making it a permanent accession thereto, and, in consequence, passed to the owners of the property on the forfeiture of the contract; the remaining property was awarded to the receiver.

Noticing, first, the appeal of the receiver, his learned counsel contend that the law relating to the doctrine of fixtures is applicable and controlling, and they argue, with much force, that the property here awarded to the owners are not fixtures, as this court has heretofore applied and defined the term. But it will be observed that, by the clause of the contract of purchase we have quoted, it is provided that, upon default in the terms of the contract by the purchaser, it will deliver up possession of the mining claims to the owners, "together with all improvements placed thereon by" the purchaser. We think the term "improvements," as here used, must have a somewhat broader signification than that which is usually ac-

corded to the term "fixtures," and that the rights of the parties are to be determined by the meaning of this term rather than by the meaning of the word fixtures. By the term improvements, however, not everything placed upon the property will pass to the owner on a retaking of possession after default. The term must mean improvements of the realty; that is to say, such things as are placed thereon by the way of betterments which are of a permanent nature and which add to the value of the property as real property. This would include buildings and structures of every kind, and also such machinery as was placed thereon of a permanent nature and which tended to increase the value of the property for the purposes for which it was used; in this instance, those things of a permanent nature which tended to increase the value of the property as a mine. Much can pass thereunder which, strictly speaking, cannot be denominated fixtures, and which in the absence of such a condition might be taken away.

Turning to the evidence, we find nothing which the court awarded the owners which cannot be said to be an improvement of the property. It must be borne in mind that this is a mining property, having no value over and above the surrounding property unless the ores it contains can be extracted from it. To extract these ores profitably and successfully machinery of the sort here in question is an essential. It is all attached to the realty; is fixed in place and permanent in the sense that it can remain so attached and fixed until destroyed by the elements or worn out by use. Plainly, we think, these articles are improvements of a permanent nature, which enhance the value of the realty for the uses for which it is intended.

The authorities clearly distinguish between the word "improvements" and the word "fixtures," holding that under the former term much will pass which would be excluded under the latter. In *French v. Mayor etc. of New York,* 16 How. Pr. 220, it is said:

"It [improvements] is a more comprehensive word than 'fixtures' and necessarily includes it, and such additions as the law might not regard as fixtures. It would be difficult to select a more comprehensive word; and where the parties say that all improvements which may be placed on the premises shall belong to the lessors, it is difficult to say what, if anything, would be excluded."

In *Smith v. Detroit & D. Gold Min. Co.,* 17 S. D. 413, 97 N. W. 17, the owner of a mining claim contracted to sell the same to a purchaser under an option agreement which among other things provided that in the case the purchaser should fail to carry out the terms of the agreement the improvements placed thereon by the purchaser should become the property of the seller. The purchaser defaulted in the terms of the contract and removed from the premises certain machinery and tools which it had placed thereon described in the complaint in the following language:

"Two boilers; one hoisting engine; one air compressor; two air drills; piping and fittings for said drills; one electric light plant, fittings and machinery; one station pump and fittings; one sinking pump and fittings; one air drum; one hoisting cage; thirteen hundred feet of iron track; miscellaneous lot of drills, tools, and other personal property belonging to the Ground Hog claim, and used at the hoist thereon."

The owner's action was to recover the property removed. Holding that he was entitled to recover, the court said:

"There is no merit in the contention that the shaft and drifts are the improvements which it was stipu-

lated should be retained by respondent as rent for the occupation of the property during the time appellants might continue in possession, and as damages arising from a breach of the contract to purchase. At the termination of appellant's estate by their failure to perform the conditions of the option, such holes in the ground would of necessity revert with the land to respondent, and it was never the intention to regard anything of that character as an improvement. The parties had reference to removable betterments, which, in the absence of an agreement to the contrary, might be taken away. At page 66 of 16 Am. & Eng. Ency. of Law, the author appends the following note to his definition of the term 'Improvements': 'It would be difficult to select a more comprehensive word, and, where the parties say that all improvements which may be placed on the premises shall belong to the lessor, it is difficult to say what, if anything, would be excluded'."

In *Parker v. Wulstein*, 48 N. J. Eq. 94, 21 Atl. 623, a lessee of a building covenanted that "all improvements of the building shall belong to the landlord at the expiration of the term." In a controversy as to the things included in the word improvements, there was involved shelves, a furnace and flues, iron hooks for holding awnings with iron frames and awning material attached to the hooks, all of which could be removed without special injury to the building. Holding that these articles were embraced in the term improvements, the court said:

"Wulstein insisted that none of the articles mentioned can properly be regarded as an improvement to the building. I think a little reflection will satisfy every candid inquirer that the complainant is entitled to what he prays for in this respect. The word 'improvement' may be said to comprehend everything that tends to add to the value or convenience of a building or a place of business, whether it be a store, manufacturing establishment, warehouse or farming

premises. It certainly includes repairs of every description. It necessarily includes much more than the term 'fixtures.' Indeed, so far as I am able to understand, it is difficult to conceive any additions made to a building by a tenant for his own convenience in the conduct of the business which may not properly be included in the term 'improvements'."

See further: *Peaceable Creek Coal Co. v. Jackson,* 26 Okl. 1, 108 Pac. 409, Ann. Cas. 1912B 1; *In re Howard Laundry Co.,* 203 Fed. 445; *Ames v. Trenton Brewing Co.,* 56 N. J. Eq. 309, 38 Atl. 858.

The receiver calls attention to the somewhat peculiar phraseology of the contract, and contends that it is only the installment payments which are deemed liquidated damages in case of a forfeiture of the contract, and that the clause following relating to the improvements must be considered as a penalty to be awarded to the owners only in so far as they may show that they have suffered actual damages from the breach of the contract. But we cannot think this construction of the contract tenable. It may be seriously questioned, we think, whether the rules applicable to forfeiture and penalties are applicable to provisions of a contract of this nature; but, if they are, there is nothing in this record requiring their application. The purchaser had the right to extract ores from the mine and apply the proceeds therefrom to its own use; hence the clause is not unreasonable viewed as a consideration for this privilege. Moreover, the parties were *sui juris,* the agreement is one within their power to make, there is no showing of fraud or overreaching or anything that indicates that it is in any way inequitable. In such a case the courts have no duty but to enforce it.

What we have said concerning the appeal of the receiver meets, in the main, the question suggested by

the appeal of the owners. They claim that the court should have awarded them, in addition to the articles actually awarded, the tools and implements which we have described as useful in the operation of the mine, but in no manner improvements of the realty. We think the court rightly adjudged that these did not pass to the owners. While some of the cases cited use language broad enough to include them, the precise question was not there presented. The language was used with reference to things which were properly improvements of the realty. The correct rule, as we view it, is stated by the New Jersey court in *Ames v. Trenton Brewing Co., supra,* where this language is used:

"The improvements, to be within the provision, must, when made, savor of the realty. The association of the words in the clause of the covenant shows this to be the true meaning. It was 'alterations, repairs or improvements made upon the premises, which should be left. That is, if the premises should be altered, as by opening the wall and placing a window, the window should remain. If they should be repaired, as by hanging a new door in place of a broken one, the new door should be left. I think the improvements must also have been improvements of the demised premises, so that the condition and value of the premises as realty were improved, and that the word did not include articles which were in their nature chattels which had not been subjected by the parties to any action which converted them into realty. The covenant did not refer to improvements brought upon or placed in the demised premises. It was improvements made of the premises themselves which were agreed to be left. The complainant's counsel asked several witnesses whether the disputed articles were not improvements of the premises, and whether if they were taken away the premises would not be less valuable, and has advanced some argument upon

the theory indicated by these questions. The true inquiry is not whether the presence of these things is an improvement of the place, in the general sense of the questions asked. The presence in the saloon of the bars and their equipment is an improvement in the same sense that the room is improved by the presence of the chairs, tables and carpets, &c., which are in the chattel mortgage but are not claimed under the covenant. Such things are improvements to the appearance of the place, but none of them can properly be deemed to be of that fixed character which is necessary in order to make them improvements of the real estate or its appurtenances. I think it must be held that the essence of the covenant is that the improvements shall be of the demised premises. Whether they were or were not improvements in the sense that they were betterings of the realty must depend upon their essential nature and the action and intention of the lessee in relating them to the demised premises; the opinions of the witnesses as to the result are of little weight in the matter."

The judgment will stand affirmed.

CHADWICK, C. J., MOUNT, PARKER, and HOLCOMB, JJ., concur.