[No. 16654.  Department One.  January 26, 1922.]

WM. G. REEDER, *Appellant,* v. HUDSON CONSOLIDATED MINES COMPANY, *Defendant,* C. W. SMITH, *Intervener and Respondent.*[1]

FIXTURES (9) — BETWEEN VENDOR AND PURCHASER — INTENT IN MAKING ANNEXATION—EVIDENCE—SUFFICIENCY. Machinery and appliances annexed to a mine by the owner for the purpose of its development and operation pass to the purchaser as part of the realty upon a sale of the mine "together with all improvements;" and where such property is mortgaged back to the vendor to secure a purchase-money mortgage, an attaching creditor of the mortgagor can acquire no lien on such mining equipment and machinery as is shown by the intent of the parties to have been annexed to the mine as a part of the realty.

SAME (9). Where the owner of mining claims had annexed to the property for the purpose of development of the mine a quartz mill with its necessary machinery, an electric transformer, an electric motor, and "T" rails attached to the premises, on his sale of the mine with a mortgage back covering the claims "together

[1]Reported in 203 Pac. 951.

with all improvements," an attaching creditor of the mortgagor could acquire no lien against such annexed property on the theory they were merely trade fixtures, since the intent of the vendor and his grantee is apparent that the equipment was treated as part of the realty.

Appeal from a judgment of the superior court for Okanogan county, Neal, J., entered September 21, 1920, upon findings in favor of the plaintiff and intervener, but dissolving a writ of attachment upon certain property, tried to the court. Affirmed.

*W. C. Gresham*, for appellant.

*Adams & Vincent*, for respondent.

MITCHELL, J.—Prior to March 15, 1917, C. W. Smith owned a group of four mining claims in Okanogan county, on which were situated certain buildings, including mill buildings and machinery attached and other mining equipment for the purpose of operating the mines. The property involved in this appeal was a part of the equipment or machinery and consisted of the following: One 10 stamp quartz mill and machinery belonging thereto; one electric transformer; one 50 horse power Fairbanks & Morse Company electric motor, and certain "T" rails attached to the premises.

He sold and delivered the mining property and improvements, and in consideration therefor, on March 15, 1917, took a purchase price mortgage in the sum of $3,000 from the Hudson Consolidated Mines Company, a corporation, covering the mining claims and improvements. Upon default in payment of certain of the notes and mortgage, he commenced a foreclosure action on August 5, 1919. While that suit was pending, and on August 22, 1919, William G. Reeder commenced an action against the Hudson Consolidated Mines Company on an open account for services ren-

dered and, by a writ of attachment, seized a quantity of the property of the mining company, including the machinery and equipment hereinbefore specifically mentioned. Thereupon C. W. Smith, plaintiff in the mortgage foreclosure suit, intervened in the Reeder suit. Upon the trial of the case, judgment was given Reeder in the amount sued for, which was declared to be a lien upon a large quantity of property seized by the writ of attachment, but the writ of attachment was dissolved as to the stamp quartz mill and machinery belonging thereto, the electric transformer, the 50 horse power electric motor, and all "T" rails attached to the premises. From that portion of the judgment dissolving the attachment upon the property just mentioned, William G. Reeder has appealed.

The Hudson Consolidated Mines Company defaulted in the case after personal service of the summons and complaint. The controversy now is between the appellant and C. W. Smith, and the only question to be determined is whether the property as to which the attachment was dissolved was real or personal property. As stated by the appellant, "of course, if it had been so attached as to become a part of the realty it was covered by respondent's mortgage; if not, respondent had no lien on it and appellant's attachment should not have been dissolved but preserved in the judgment." The court found that the property included in the mortgage is insufficient in value to satisfy the debt it was given to secure.

In determining whether a chattel annexed to the freehold is a trade fixture or a part of the realty the principal inquiry is into the intent of the party making the annexation. This may sometimes be difficult, but, whatever may be the legal relation of the parties waging the controversy, where the intent is discovered it

is generally controlling. *Ballard v. Alaska Theatre Co.,* 93 Wash. 655, 161 Pac. 478. In the case just cited it was said:

"A different rule obtains for determining the intent when the question arises between landlord and tenant, or licensor and licensee, than obtains when it arises between grantor and grantee, mortgagor and mortgagee, or heir and executor. When the annexation is made by a tenant or licensor the presumption is that he did not intend to enrich the freehold, but intended to reserve title to the chattel annexed in himself, while from an annexation by the owner of the property, the presumption is the other way. *Chase v. Tacoma Box Co.,* 11 Wash. 377, 39 Pac. 639; *Dunsmuir v. Port Angeles Gas, W., El. L. & P. Co.,* 30 Wash. 586, 71 Pac. 9; *Lynn v. Waldron,* 38 Wash. 82, 80 Pac. 292; *Welsh v. McDonald,* 64 Wash. 108, 116 Pac. 589; *Cutler v. Keller,* 88 Wash. 334, 153 Pac. 15."

In the present case, the evidence shows that the property in question was attached to the real estate as firmly as it appears to have been reasonably possible to attach it, and, highly important, it was so attached by the owner himself. The character of the property to which the annexation was made indicates the intention, since the things annexed were in use and to be used in the actual operation of the mines. The lands were patented mining claims. They were beyond the stage of prospecting and were ready for the work of production, which could not be accomplished without these annexations that were installed as a part and parcel of mining real estate. The presumption must be indulged in that they were attached by the owner with the intention to enrich the freehold. They were conveyed by a warranty deed by the owner, who had annexed them, the consideration for which deed was a real estate mortgage back that covered not simply the mining claims as such, but with the added words,

"together with all improvements." In the case of *Cutler v. Keller*, 88 Wash. 334, 153 Pac. 15, L. R. A. 1917C 1116, Tiedeman, Real Property (3d ed.), p. 23, § 17, was quoted with approval, as follows:

" 'When the absolute owner of land, for the better use of his land, erects property upon, or attaches it to the freehold, it will go to his heir, or pass by deed, to his grantee, and the same general rule applies between mortgagor and mortgagee, but as between landlord and tenant and licensor and licensee, this rule is relaxed, with a view to the encouragement of mechanical and agricultural pursuits.' "

The owner of the property, who made the annexation, and his grantee, who mortgaged the property back, by their dealings and conduct treated and considered the articles as annexed to the freehold and as constituting improvements to the real estate. This was done prior to the incurring of the indebtedness upon which this suit is based, and in this contest at the hands of the creditor of that grantee-mortgagor the creditor can have no claim, as against the rights of the mortgagee concerning the character of the property, greater than that of his debtor.

The recent case of *Siegloch v. Iroquois Mining Co.*, 106 Wash. 632, 181 Pac. 51, throws considerable light upon the case at bar. That was a case of the sale of mining property to be paid for on the installment plan, wherein provision was made for forfeiture upon default in making payments, and providing the owner was entitled to possession of the mining claims with all improvements placed thereon by the purchaser. The controversy was between the receiver of the purchaser and the owner as to whether machinery that had been placed on the property by the purchaser became a part of the freehold or continued to be chattels. It was said:

"By the term improvements, however, not everything placed upon the property will pass to the owner on a retaking of possession after default. The term must mean improvements of the realty; that is to say, such things as are placed thereon by the way of betterments which are of a permanent nature and which add to the value of the property as real property. This would include buildings and structures of every kind, and also such machinery as was placed thereon of a permanent nature and which tended to increase the value of the property for the purposes for which it' was used; in this instance, those things of a permanent nature which tended to increase the value of the property as a mine."

And here, as in that case:

"Turning to the evidence, we find nothing which the court awarded the owners which cannot be said to be an improvement of the property. It must be borne in mind that this is a mining property, having no value over and above the surrounding property unless the ores it contains can be extracted from it. To extract these ores profitably and successfully machinery of the sort here in question is an essential. It is all attached to the realty; is fixed in place and permanent in the sense that it can remain so attached and fixed until destroyed by the elements or worn out by use. Plainly, we think, these articles are improvements of a permanent nature, which enhance the value of the realty for the uses for which it is intended."

Being satisfied the judgment of the trial court was correct, it is affirmed.

PARKER, C. J., FULLERTON, TOLMAN, and BRIDGES, JJ., concur.