[No. 20075.   Department One.   January 20, 1927.]

OLYMPIA LODGE No. 1, F. & A. M., *Respondent,* v.
WILLIAM L. KELLER *et al., Appellants.*[1]

[1] FIXTURES (5, 12)—BETWEEN LANDLORD AND TENANT—REMOVAL—
LOSS OF RIGHT BY TENANT.   Under a lease of premises for a
service station, providing that all improvements on the premises
should become the property of the landlord on the termination
of the lease, whether by expiration of the term or by forfeiture,
upon forfeiture of the lease for non-payment of the rent the
tenant has no right to remove fixtures necessary for the use
of the building and within the contemplation of the parties
when the property was leased.

Appeal from a judgment of the superior court for
Thurston county, Wilson, J., entered April 12, 1926,
upon findings in favor of the plaintiff, in an action for
conversion, tried to the court.   Affirmed.

*Frank C. Owings,* for appellants.

*Thos. L. O'Leary* and *Bigelow & Manier,* for re-
spondent.

FULLERTON, J.—On December 26, 1923, the plaintiff,
Olympia Lodge No. 1, F. & A. M., a corporation, being
then the owner of a certain tract of land situate in
Thurston county, leased the land to the defendant,
William L. Keller, for a term of twenty years.   The
lease provided for stated rentals, payable in advance,
increasing as time progressed.   For the first five years
of the term, the rental was to be paid on the first day
of each year, or within five days thereafter.   The lease
was in writing and contained the following provisions:

"Lessee agrees to pay all taxes which may accrue
against the lands hereby leased, and the business
operated thereon, during the term of the lease.   .   .   .

[1]Reported in 252 Pac. 121.

It is further understood and agreed that the lessee intends to use said property for an auto park with auto camp, service station, concessions for swimming pool and other amusement enterprises. . . . Time shall be the essence of this lease, and if default be made in payment of any portion of the minimum rent when the same becomes due, and for 5 days thereafter, or any other of the terms, covenants and conditions of this lease be violated or neglected by lessee, the said lessor or its agent or attorney may re-enter and take possession of the said premises, and every part thereof, and expel lessee, at its option. At the expiration of lease, lessee agrees to quit the premises and leave all improvements thereon which shall become the property of the party of the first part. . . . In the event that for any reason this lease is forfeited, all improvements at such time made and placed upon said premises by lessee and all payments made by him as provided for herein, shall be forfeited by him to the lessor as liquidated damages.''

After entering into the lease, the lessee took possession of the property and erected thereon an automobile service station and a rest room, into which he installed the usual fixtures. In the station proper were installed two gasoline pumps, two gasoline tanks; six oil barrels or tanks, used for storing lubricating oil; an air compresser, consisting of a motor, pump and tank; and two air stands; and a ''Lubo system.'' These were fastened to the floors of the building with lag screws, and, in so far as they required connection for use, were connected together by pipes. The rest room was fitted with the usual toilet fixtures, fastened in the usual manner.

The lessee paid the reserved rentals for the years 1924 and 1925, but failed to pay the taxes levied against the property, or the rental for the year 1926. On the failure to pay the rental due for 1926, the lessor served a notice of forfeiture on the lessee. The lessee, how-

ever, did not then pay the rent due nor the taxes, but proceeded to remove the fixtures installed in the service station, removing all of them excepting the two gas tanks, which could not be taken out without destroying the floor extending across the building in the region of the gas pumps. Two days later he delivered the keys of the buildings to the lessor.

In this action the lessor sought to recover the fixtures removed. In his answer to the complaint the lessee not only sought to justify the removal of the fixtures he had removed, but sought an adjudication of his right to remove the two gas tanks, the toilet fixtures in the rest room, and also an electric sign which he had placed over the drive-way entering the premises. On the trial, which was had before the court sitting without a jury, the court adjudicated that the removal of the fixtures was without right, and directed their return. It also determined that the lessee had no right to remove the remainder of the fixtures mentioned. The appeal is from the judgment embodying the conclusions of the court.

[1] The question involved is whether, under the terms of the lease, the articles of property removed, and sought to be removed from the leased premises by the tenant, are the property of the tenant or the property of the landlord. That they are what are customarily known as trade fixtures, there can be but little doubt. They are articles manufactured for general use, without special reference to any particular building or place. They are articles sold by the general trade, and a person desiring their use designs his structure in which he intends to use them so as to adapt it to the articles, rather than first erecting the structure and then ordering articles designed to fit the particular structure. It is a general rule, also, that many things will be held to be a fixture as between a vendor

and purchaser, or a mortgagor or mortgagee, that will not be so held as between a landlord and a tenant; the reason for the difference being that, when an annexation to the freehold is made by a landlord, the presumption is that he intends to enrich the freehold; while as to an annexation made by the tenant, the presumption is the other way. So, too, the earlier common law rule relative to fixtures put upon property by a tenant has been much relaxed, and it is now generally held that trade fixtures may be removed by the tenant when it can be done without substantial injury to the freehold.

It would follow from the foregoing consideration that, if nothing more were here involved than the general rule applicable to landlord and tenant, the tenant on the termination of the lease, whether by lapse of time or by forfeiture, would have the right to remove the articles mentioned on the ground that they are trade fixtures. But the parties may, by their contract of lease, provide for a different rule, and the more narrow question here is, have they so provided.

Turning to the quotations we have made from the lease, it will be observed that the parties have provided that whether the lease is terminated by the expiration of the term, or whether it is terminated by forfeiture, all improvements then on the premises shall become the property of the landlord. It will be further observed that the lease was entered into with the intent that a specific enterprise should be conducted thereon, namely, that of ''an auto park, auto camp, service station, concessions for a swimming pool, and other amusement enterprises.'' Some of these enumerated things may be rather indefinite as to their meaning, but it is sufficiently certain that one of the enumerated things was an automobile service station. An automo-

bile service station is not such, unless it is equipped to perform the functions of such a station. A mere building in which the necessary fixtures for a service station may be installed is not such a station, nor does it become such until the fixtures to make it usable are actually installed. When, therefore, the parties to the lease provided for the installation of a service station, and further provided that all improvements put upon the premises should, on the termination of the lease, become the property of the landlord, they contemplated that not only the building erected for that purpose should become the property of the landlord, but that the fixtures placed therein necessary to make it a service station should likewise become his property also.

Our attention has been called to no case where the precise question is presented, but we think our own cases of *Siegloch v. Iroquois Mining Co.*, 106 Wash. 632, 181 Pac. 51, and *Reeder v. Hudson Consol. Mines Co.*, 118 Wash. 505, 203 Pac. 951, support the rule in principle. In these cases, it was recognized that the term "improvement" was of broader signification than the term "fixture," and that much would be included under the former term that would be excluded under the latter. It is true that the improvement, to be within the provisions of such a clause in a lease, must, when made, savor of the realty. The term would not include mere loose articles about the premises in no way attached to the freehold. But these particular articles were so attached; they could remain in position until worn out by use; and, since it was in the contemplation of the parties that they should be installed, we conclude that the trial court rightly adjudged that they passed to the landlord on the termination of the lease.

The toilet fixtures and electric sign fall within the

same rule. Their installation was within the contemplation of the parties when the lease was entered into, and became the property of the landlord when the lease was forfeited.

The judgment is affirmed.

MAIN, TOLMAN, and PARKER, JJ., concur.