[No. 29143. Department Two. May 23, 1944.]

WILLIAM R. FORMAN *et al., Respondents,* v. COLUMBIA THEATER COMPANY *et al., Appellants.*[1]

¹Reported in 148 P. (2d) 951.

686

*J. C. McCoy,* for appellants.

*George C. Tichy,* for respondents.

SIMPSON, C. J.—This action was instituted by plaintiffs to enjoin defendants from removing certain fixtures from a building, owned by plaintiffs, which had been held by defendants under lease.

In their complaint, the plaintiffs allege that they owned a certain theater building in the city of Longview which had been held and used by defendants under a lease obtained from a former owner. The building had been wired by the builder for theater purposes and thereafter altered and improved from time to time by rewiring and the placing therein of certain new fixtures. The defendants were in the process of abandoning the premises and were removing property which plaintiffs claimed as fixtures. Removal of the fixtures from the building would render it valueless for the purposes for which it was constructed and the property removed would be reduced to a mass of worthless materials. They asked in their complaint that defendants be enjoined from taking the equipment and property; that defendants be required to return what had already been removed and

pay damages for every item not returnable; and, in addition, they asked for damages to the building.

The defendants answered, alleging their ownership of the contested items and also of all the fixtures placed in the building by them; and then asked to be adjudged to be the owners of the equipment and property in question; that they be allowed to remove it from the premises.

At the completion of the trial, the court entered its findings of fact and conclusions of law and judgment favorable to plaintiffs.

Defendants prosecute this appeal and make the following assignments of error: (1) In awarding to respondents certain original conduit, wiring, switches and switch boxes, and automatic fire shutters and frames; (2) in awarding respondents additional conduits and wiring, switches and switch boxes, signs, and other articles of improvement placed in the theater building; (3) that the court erred in entering certain findings of fact and conclusions of law, in that they were not supported by the evidence or the record; (4) that the court erred in signing and entering certain paragraphs of the decree.

The facts may be summarized as follows: The building in question was erected in 1925. Although the structure includes space devoted to two small shops and one apartment, the main purpose for which it was constructed was the operation of a motion picture theater. In 1926, V. P. Quoidbach purchased the property from the original owner and continued the operation of the motion picture theater for about six months. In May, 1926, it was leased to the appellant Columbia Theater Company and has been occupied by it until the events giving rise to this action which occurred in 1943. During the operation of the theater by the original owners and Mr. Quoidbach, it was known and advertised as the "Peekin." The Columbia Theater Company continued business on the premises under the same name until 1934. In that year, the name was changed to the "Roxy."

From the beginning of its tenancy until 1936, the Columbia Theater Company was in possession of the premises under

a series of leases which were renewed from time to time. After 1936, it continued to occupy the building under a month to month tenancy. At the time of the signing of the first lease or shortly thereafter, Quoidbach sold to the Columbia Theater Company certain property evidenced by a bill of sale, a portion of which reads as follows:

"That V. P. Quoidbach and G. M. Quoidbach, his wife, : . . the parties of the first part, for and in consideration of the sum of One Dollar and other valuable consideration, lawful money of the United States of America, to them in hand paid by Columbia Theater Company, a Corporation, . . . the party of the second part, the receipt whereof is hereby acknowledged, do by these presents grant, bargain, sell and deliver unto the said party of the second part, the following described personal property . . . to-wit: All of the fixtures, seats, furniture and theater equipment, which consists of projection machines, screen, curtains, organ, and generally speaking, all of the theater equipment in and appertaining to what is known as the 'Peekin Theater,' . . ."

The following memorandum was drawn up and furnished, stating specifically the equipment covered by the bill of sale:

| | |
|---|---:|
| "Robert Morten Organ | $4,000.00 |
| Express and Installing Same | 300.00 |
| 502 Opera Chairs | 1,706.80 |
| Express & Installing same | 350.00 |
| 2 Special Motiograph Projectors | 1,300.00 |
| 2 Manhattan Lenses | 25.00 |
| 6 2000 ft. reels | 19.50 |
| Labor & Parts on stereopticon | 15.00 |
| Slide Machine, Work Bench, Rewinders, etc. | 149.25 |
| 1 11' 6" x 15' 4" Minusa mazda screen | 220.41 |
| Express, Frame and installing same | 100.00 |
| Fire Protection and Installing | 200.00 |
| Stage and house Draperies | 850.00 |
| Matting and Rubber Ends | 188.83 |
| Sopozones, Toilet Supplies, Lights, Janitor Supplies, Lobby Display, Bill-Boards, etc. | 575.21 |
| | $10,000.00" |

That portion of the original lease which is pertinent here is clause ten thereof:

"That on termination of this lease by expiration of the term thereof or otherwise, they will immediately without notice quit and surrender said premises to the lessors in as good order and condition and repair as reasonable use and

wear of same will permit, and will promptly remove their theater equipment and personal property, *and will leave on said premises all permanent improvements and repairs made during the term*; and that in case they shall hold over after the expiration of the term with the consent of the lessors, express or implied, such holding shall be construed to be a tenancy from month to month at the monthly rent hereinbefore specified; . . . " (Italics ours.)

The lease dated May 19, 1926, was canceled and another executed on June 1, 1931, calling for a reduced rental. A third lease, further reducing the rent, was entered into between the parties in July, 1932. The last lease executed between the parties was signed in June, 1934, for the obvious purpose of making further adjustments in the rent of the premises. Clause ten contained in the first lease was included in all subsequent leases and the expiration date named in each of the leases was June 1, 1936. No reference is made in any of the documents to specific improvements which had been made or contemplated by the lessees.

In January, 1943, Quoidbach and wife sold the property to respondents herein and shortly thereafter the Columbia Theater Company began to abandon the premises. In so doing, it proceeded to remove certain property which is the subject of this suit.

■ We shall first consider the question relating to the items which appellants claimed passed to the corporation by virtue of the bill of sale. The items claimed to have been included were the original wiring and conduits in the building, five fire doors, and the frames for automatic fire shutters. It is appellants' contention that the articles were in the building at the time of the execution of the bill of sale and were included under the term, "etc." This abbreviation occurs at two different places in the memorandum which itemized the property which passed to the corporation.

According to Webster's New International Dictionary, "et cetera" or its abbreviation, "etc.," means

"And others (of the like kind); and the rest; and so on; and so forth;—used to point out that other things which could be mentioned are to be understood."

Accord:   *Schouler, Petitioner,* 134 Mass. 426.

The witnesses for appellants and those testifying in favor of respondents were not in agreement as to the understanding relative to whether or not the items were included and covered by the term "etc."

The doors in question may best be described by quoting the testimony of Mr. Quoidbach:

"Q. Explain to the court, how many of these fire doors do you have like this?   A. We have three doors like that. Wait a minute.   We have two doors on the stage, and the other door in the basement to shut off the boiler room was on a hinge.   Lately here when we revamped the boiler room and we revamped the fuel room there, as I remember, and I think I am right, we took the door that was hung at the boiler room out and put it at the fuel room for fire protection.   Q. Would you explain to the court how these fire doors are constructed?   A. It is wood construction, three layers of wood, what we call the core, and then they are covered with sheet metal.   Q. How are they hung?   A. They are hung on a track and they are supposed to have fusible links, so in case of fire they will automatically shut themselves.   Q. How are they affixed to the building?   A. They are hung by irons, just bolted down to the concrete wall."

It seems highly improbable that articles of such importance as electrical wiring and conduits, fire doors, and automatic fire shutters in a building designed for the use of a motion picture theater would be included without definite reference if title thereto was intended to pass. There is no connection between the items mentioned and those set out in the bill of sale.   Moreover, the trial court heard the witnesses and is the best judge of their credibility. We hold that the wiring and conduits, the fire doors, and the frames for automatic fire shutters did not pass to the corporation by virtue of the bill of sale.

■   Other contested items were cork floor covering, a porcelain urinal, a large vertical sign on the face of the theater, bearing the words, "Roxy Theater," advertising boards made of metal with intricate wiring for illumination, a marquee over the entrance to the theater, and Ozite

soundproof material pasted on the walls for the purpose of improving the acoustical properties of the room.

As to these items, counsel have ably briefed the law of fixtures. However, we do not believe that law is applicable to the case at bar. Our conclusion is that the contract between the parties determines the ownership of the property in question and for that reason, the rights of the parties depend entirely upon the proper interpretation of that instrument.

If the various leases had been silent as to the ownership of the items in dispute, then the ownership would necessarily have to be determined upon whether or not there were fixtures and, if so, to whom they belonged—to the landlord or tenant. When, however, a landlord and tenant make a lease agreement in which there are stipulations relative to the ownership of chattels which may be placed upon the leased premises by the tenant, the agreement will be enforced regardless of what might be the rights of the parties at common law. In cases of that character, the contract is the law made by the parties themselves which must determine their rights.

In this connection, it must be borne in mind that all of the contested items were put upon the premises by the Columbia Theater Company prior to June, 1936, which was during the time the company was in possession of the premises under the lease agreement. It must be presumed that the annexations were made with the above-quoted clause ten in mind, which provided that all permanent improvements would be left upon the premises at the expiration of the lease.

The question before us is determined by several of our cases to which we now call attention. In *Siegloch v. Iroquois Mining Co.,* 106 Wash. 632, 181 Pac. 51, we held that the term "improvements" has a broader significance than the term "fixtures." That case was concerned with property placed upon a tract of mining land under a contract of sale. The contract was forfeited for failure to make the required payments, and the question presented was whether a drill press and other mining equipment placed upon the land by

the vendee for use in the business of mining were removable by the vendee when his contract was forfeited. The contract for the sale of the land had provided that, upon default, the vendee would surrender the premises, together with all improvements placed thereon by the vendee. The trial court found that the personal property was attached to the freehold; that it had been the intent of the vendee, in bringing it upon the land, to make a permanent accession to the realty. In passing upon the trial court's findings, this court said:

"We think the term 'improvements,' as here used, must have a somewhat broader signification than that which is usually accorded to the term 'fixtures,' and that the rights of the parties are to be determined by the meaning of this term rather than by the meaning of the word fixtures. By the term improvements, however, not everything placed upon the property will pass to the owner on a retaking of possession after default. The term must mean improvements of the realty; that is to say, such things as are placed thereon by the way of betterments which are of a permanent nature and which add to the value of the property as real property. This would include buildings and structures of every kind, and also such machinery as was placed thereon of a permanent nature and which tended to increase the value of the property for the purposes for which it was used; in this instance, those things of a permanent nature which tended to increase the value of the property as a mine. Much can pass thereunder which, strictly speaking, cannot be denominated fixtures, and which in the absence of such a condition might be taken away."

We had occasion to apply the same principle in *Olympia Lodge No. 1, F. & A. M. v. Keller,* 142 Wash. 93, 252 Pac. 121, 52 A. L. R. 795. In that case, the lessor leased to its tenant certain property to be used as a gasoline filling station and auto park. The lease provided:

"At the expiration of lease, lessee agrees to quit the premises and leave all improvements thereon which shall become the property of the party of the first part."

The lessee had made certain improvements consisting of the installation of gas pumps, tanks, oil barrels, and compressers, and had fitted up the rest room with suitable

fixtures. He had also erected an electric sign at the entrance to the property. In discussing the question, we said:

"The question involved is whether, under the terms of the lease, the articles of property removed, and sought to be removed from the leased premises by the tenant, are the property of the tenant or the property of the landlord. That they are what are customarily known as trade fixtures there can be but little doubt. They are articles manufactured for general use, without special reference to any particular building or place. They are articles sold by the general trade, and a person desiring their use designs his structure in which he intends to use them so as to adapt it to the articles, rather than first erecting the structure and then ordering articles designed to fit the particular structure. It is a general rule, also, that many things will be held to be a fixture as between a vendor and purchaser, or a mortgagor or mortgagee, that will not be so held as between a landlord and a tenant; the reason for the difference being that, when an annexation to the freehold is made by a landlord, the presumption is that he intends to enrich the freehold; while as to an annexation made by the tenant, the presumption is the other way. So, too, the earlier common law rule relative to fixtures put upon property by a tenant has been much relaxed, and it is now generally held that trade fixtures may be removed by the tenant when it can be done without substantial injury to the freehold.

"It would follow from the foregoing consideration that, if nothing more were here involved than the general rule applicable to landlord and tenant, the tenant on the termination of the lease, whether by lapse of time or by forfeiture, would have the right to remove the articles mentioned on the ground that they are trade fixtures. But the parties may, by their contract of lease, provide for a different rule, and the more narrow question here is, have they so provided.

" . . . When, therefore, the parties to the lease provided for the installation of a service station, and further provided that all improvements put upon the premises should, on the termination of the lease, become the property of the landlord, they contemplated that not only the building erected for that purpose should become the property of the landlord, but that the fixtures placed therein necessary to make it a service station should likewise become his property also. . . . It is true that the improvement, to be within the provisions of such a clause in a lease,

must, when made, savor of the realty. The term would not include mere loose articles about the premises in no way attached to the freehold. But these particular articles were so attached; they could remain in position until worn out by use; and, since it was in the contemplation of the parties that they should be installed, we conclude that the trial court rightly adjudged that they passed to the landlord on the termination of the lease.

"The toilet fixtures and electric sign fall within the same rule. Their installation was within the contemplation of the parties when the lease was entered into, and became the property of the landlord when the lease was forfeited."

Accord: *Parker v. Wulstein,* 48 N. J. Eq. 94, 21 Atl. 623; *French v. Mayor etc. of New York,* 16 How. Prac. (N. Y.) 220.

■■ It is the conceded rule that whether or not property annexed to the freehold becomes a part of the realty depends upon the intention of the party making the annexation. *Strong v. Sunset Copper Co.,* 9 Wn. (2d) 214, 114 P. (2d) 526, 135 A. L. R. 423. The theater building owned by respondents was rented for one purpose—the operation of a motion picture theater. The improvements and additions were made for the sole purpose of improving the building for that purpose. The new wiring, the Ozite soundproofing on the walls were merely for the purpose of making the building suitable for the showing of sound pictures. The portion of the wiring which is not imbedded in the walls and floors is attached to the walls by straps which are nailed to the walls. The Ozite is glued to the wall, and the urinal is cemented into the wall and floor. These items definitely "savor of realty," to use the expression of the *Keller* case, *supra.* This applies to the electric sign, the false ceiling on the marquee, and the reader boards attached thereto. All are physically attached to the building, and the ease or hardship incident to removing them is immaterial.

In support of their contentions, appellants cite the case of *Filley v. Christopher,* 39 Wash. 22, 80 Pac. 834. That case states the true rule relative to fixtures and is undoubtedly correct, but has no application to the instant case. However, if we were to apply the test of the case just mentioned

to the items involved here, the result would not be changed; for in that case we find:

"The true criterion of a fixture is the united application of these requisites: (1) Actual annexation to the realty, or something appurtenant thereto; (2) application to the use or purpose to which that part of the realty with which it is connected is appropriated; and (3) the intention of the party making the annexation to make a permanent accession to the freehold."

Appellants place their reliance on the case of *Ballard v. Alaska Theatre Co.*, 93 Wash. 655, 161 Pac. 478, which contains an excellent discussion of the law of trade fixtures. The lease in that case obligated the lessee to erect a theater building which at the end of the term would become the property of the landlord. The lease is not set out in the opinion, but from the resume of its provisions it indicates that there was no provision covering fixtures; hence, the common law relative to the latter was properly applied in that case.

Another case having to do with fixtures is that of *Whitney v. Hahn*, 18 Wn. (2d) 198, 138 P. (2d) 669, and it concerned improvements placed upon leased premises after the expiration of the lease containing a clause relating to improvements and during time when the tenant was holding over under an oral agreement. One of the questions presented was whether the clause in the original lease that

"The lessee is hereby granted the right to make necessary and convenient changes, alterations or repairs on the said premises at his own cost and expense, *and the same shall remain in the building and become a part of the said premises,*"

was a part of the oral agreement entered into after the expiration of the term of the lease. We held that the clause did not carry over and that a furnace placed upon the premises after the expiration of the term, and which was used primarily in the tenant's business of painting automobiles, was a trade fixture and might be removed by the tenant.

These cases state the proper rule to be applied in those

situations in which there is no contract relative to improvements. They cannot apply in the case at bar for reasons already stated.

The judgment of the trial court was correct, and it is therefore affirmed.

MILLARD, BLAKE, ROBINSON, and MALLERY, JJ., concur.

July 5, 1944. Petition for rehearing denied.

