[No. 102-40555-1.    Division One.    May 25, 1970.]
Panel 1

ALLIED STORES CORPORATION, *Appellant*, v. NORTH WEST BANK, *Respondent*.

*Shidler, McBrook & Gates, George W. McBroom,* and *Christopher J. Genis,* for appellant.

*Lycette, Diamond & Sylvester* and *Simon Wampold,* for respondent.

JAMES, C. J.—In this action Allied Stores Corporation seeks a declaratory judgment interpreting a lease and judgment for reimbursement of real estate taxes it paid.

Allied Stores' predecessor in interest, Pacific Sierra Corporation, constructed a multilevel parking garage across the street from Allied Stores' "Bon Marche" department store in downtown Seattle. North West Bank negotiated with Pacific Sierra for street level space in the southeast corner of the structure. At the time the lease was signed, the space was entirely unfinished, although the garage portion of the building was substantially completed. Rough, unfinished walls separated the leased space from the remaining street level portion of the building. The ceiling of the space was the rough underside of the floor above, and the floor of the space was a rough concrete slab. There were no exterior walls, windows, or doors. Electrical plumbing services were roughed-in in the space.

It was agreed that the premises were to be used to conduct a banking or allied business and for no other purpose without the written consent of the lessor.

North West Bank agreed to "complete the leased premises in accordance with the plans prepared by architects for the Lessee and approved by the Lessor." Pacific Sierra agreed to allow North West Bank 7 months' free rent and to "contribute the sum of $100,000 for the necessary construction."

The construction which followed consisted of installing exterior walls, windows and doors, finished flooring, wiring and lighting fixtures, plumbing and plumbing fixtures, an acoustical tile ceiling, heating and air conditioning, a mezzanine floor area, and interior office areas and partitions. A

vault was constructed and a vault door hung. A night depository and a drive-in window were installed.

Pacific Sierra assigned its interest in the lease to Allied Stores about 4 years after execution of the lease.

One issue is presented in this appeal: Who is to pay the real estate taxes on the portion of the building occupied by North West Bank? The leasehold improvements (except carpeting, which was assessed as personal property) were assessed as real property and valued at $360,000. Allied Stores contends that North West Bank is required to pay all taxes, both real and personal, upon the improvements North West Bank made on the leasehold premises.

The lease was drafted by Pacific Sierra's lawyer. The pertinent provision of the lease is as follows:

31. Lessee hereby covenants and agrees to pay before delinquency all taxes, rates charges or assessments which may be levied, imposed or assessed by any governmental or quasi-governmental body upon or measured by the value of (1) Lessee's leasehold, or (2) the personal property and fixtures installed or permitted to remain by Lessee in the leased premises, or (3) any and all assets of Lessee's business, and Lessor shall in no way be resonsible [sic] for the payment of any such taxes, rates, charges and assessments.

The lease also contains the following provisions:

18. Lessee shall not make any alterations, additions or improvements in said premises, without the consent of Lessor in writing first had and obtained, and all alterations, additions and improvements, other than trade fixtures, which shall be made, shall be at the sole cost and expense of Lessee, and shall become the property of the Lessor, and shall remain in and be surrendered with the premises as a part thereof at the termination of this lease, without disturbance, molestation or injury. Any linoleum or floor covering which may be adhesively affixed to the floor shall become the property of the Lessor on installation.

27. As further consideration for the execution of this lease, the Lessee agrees to complete the leased premises in accordance with the plans prepared by architects for the Lessee and approved by the Lessor. Lessor agrees not

to unreasonably withhold approval of the plans as submitted and agrees that the plans will be considered by the Lessor and acted upon within ten days after submission. In this connection, the Lessor agrees to contribute the sum of $100,000 for the necessary construction, and Lessee agrees to pay all other costs and expenses in connection with the construction and completion of the space to be occupied by the Lessee. The seven months' free rent, as provided for herein, is for the purpose of giving the Lessee that much time to carry out the construction and complete the premises before the Lessee is obligated to pay any rental under the terms of this lease.

Allied Stores assigns error to finding of fact 11:

Under the provisions of the lease, it was the obligation of the lessor to pay the tax on the leasehold improvements which became part of the real estate and the property of lessor, and it was the obligation of lessee to pay the tax on its personal property and trade fixtures and/or fixtures which remained its property and [were] subject to removal by lessee.

The leasehold improvements which constitute part of the real estate and become the property of the lessor include the outside walls, the floors, the ceilings, office walls, partitions and paneling, electrical work including light fixtures, plumbing and plumbing work, vault, mechanical work including air conditioning, and generally all construction work.

The trade fixtures and/or fixtures which remain the property of lessee and can be removed by lessee are in addition to the usual and ordinary personal property items of furniture and office machines are [sic] the following: vault door, removable counters and shelving, night depository, drive-in window, outside sculpture and carpeting. [Lessee] paid the tax on all but vault door and night depository.

Allied Stores also assigns error to conclusion of law 1:

Under the terms of the lease, [lessor] is obligated to pay all taxes assessed by the King County Assessor on real property comprising the leased premises, including assessments on the value of leasehold improvements placed upon the premises by [lessee], with the exception only of such items as are assessed as real property but are trade fixtures or fixtures removable by [lessee] at

the expiration of the lease. Said trade fixtures upon which [lessee] must pay tax are the bank vault door and the night depository.

Allied Stores first points out that the first paragraph of finding of fact 11 is actually a conclusion of law rather than a finding of fact. We agree. We note, however, that it is, in substance, not at variance with conclusion of law 1, to which Allied Stores assigns error. We therefore consider only the other two paragraphs of the finding as proper findings of fact. See Harrison v. Consolidated Holding Co., 200 Wash. 434, 93 P.2d 729 (1939).

By paragraph 27 of the lease North West Bank is required to "carry out the construction and complete the premises." By paragraph 18 of the lease "all alterations, additions or improvements other than trade fixtures" become the property of Allied Stores. And by paragraph 31 of the lease North West Bank is required to pay "all taxes . . . levied . . . upon . . . personal property and fixtures . . . installed . . . by Lessee."

A frequent problem between lessor and lessee is whether chattels annexed to the realty are "trade fixtures," which may be removed at the end of the term, or "fixtures," which may not. See 35 Am. Jur. 2d Fixtures § 3 (1967).

The problem in this case, however, is not one of distinguishing between these two types of fixtures. It is rather to identify and to distinguish between "fixtures" and "improvements" to the real property as those terms were used in the lease. The lease specifies that the lessee shall pay the taxes on the "fixtures," but the "improvements" become the property of the lessor at the end of the term. Although in a general sense it can be said that all "fixtures" (as distinguished from "trade fixtures") become, at least temporarily, part of the real property and therefore "improvements," the converse is not true. Not all "improvements" are fixtures. Siegloch v. Iroquois Mining Co., 106 Wash. 632, 181 P. 51 (1919); see also Olympia Lodge No. 1, F. & A. M. v. Keller, 142 Wash. 93, 252 P. 121, 52 A.L.R. 795 (1927).

■ A "fixture" is a chattel which has been annexed to and has become a part of realty but which retains its separate identity and may be removed and become personalty again. *See Frost v. Schinkel,* 121 Neb. 784, 238 N.W. 659, 77 A.L.R. 1381 (1931); 1 G. Thompson, Real Property § 55 (1964). On the other hand, building materials, although chattels which may be affixed to the land, cannot be removed and regain their prior identity. When combined with labor, building materials become "improvements" to real property, irretrievably losing their separate identity. *See Rogers v. Gilinger,* 30 Pa. 185, 72 Am. Dec. 694 (1858).

Whether an "improvement" is also a "fixture" is a mixed question of fact and law. 1 G. Thompson, Real Property § 55 (1964) and cases cited. The trial judge found that the following chattels were "trade fixtures and/or fixtures": vault door, removable counters and shelving, night depository, drive-in window, outside sculpture, and carpeting. The trial judge expressly found that all of the remaining portions of the construction constituted "leasehold improvements."

Allied Stores did not bring up a statement of facts, and we must therefore assume that there is substantial evidence to support the trial judge's findings of fact. *Wilder v. Baker,* 57 Wn.2d 479, 358 P.2d 133 (1960). We must then determine whether or not the trial judge correctly construed the lease by concluding that Allied Stores must pay the real estate taxes upon the "leasehold improvements."

■■ In construing a lease, the court's function is to ascertain and give effect to the intention of the parties as expressed in their agreement. *Murray v. Odman,* 1 Wn.2d 481, 96 P.2d 489 (1939); *Wilsonian Inv. Co. v. Swope,* 180 Wash. 35, 38 P.2d 399 (1934). The agreement must be read and considered as a whole, and if, when so considered, its terms are plain and unambiguous, the intention of the parties will be deduced from the language used. *Dennis v. Southworth,* 2 Wn. App. 115, 467 P.2d 330 (1970). "Technical terms and words of art are given their technical meaning unless the context or a usage which is applicable

indicates a different meaning." Restatement of Contracts § 235(b) (1932); *see also Amick v. Baugh,* 66 Wn.2d 298, 402 P.2d 342 (1965). But if the provisions of a lease are doubtful in that they are reasonably capable of more than one interpretation, the court will adopt that interpretation which is more favorable to the lessee, particularly when, as here, the lease was drafted by the lessor. *White v. Coates,* 17 Wn.2d 686, 137 P.2d 113 (1943); *Murray v. Odman, supra; Gates v. Hutchinson Inv. Co.,* 88 Wash. 522, 153 P. 322 (1915).

■ Had the parties intended, as Allied Stores asserts, that North West Bank pay the portion of the real estate taxes assessed upon the leased premises, they could have so provided in the lease simply by using the words "real property taxes," or, alternatively, and less precisely, paragraph 31 could have provided for payment by North West Bank of the taxes levied on the "improvements" constructed by the bank. As between lessor and lessee, if there is no agreement to the contrary, real estate taxes are the obligation of the lessor. *See Graham v. Raabe,* 62 Wn.2d 753, 759 n.9, 384 P.2d 629 (1963). When a landlord attempts to shift all or a portion of the real property tax burden to the tenant, he must do so in clear and express language. *See,* Annot., 86 A.L.R.2d 670 § 4 (1962) and cases cited.

The trial judge found that North West Bank had listed the drive-in window as personal property and had paid the personal property tax levied against it. Pursuant to his conclusion of law, the trial judge awarded judgment to Allied Stores to reimburse it for the real property taxes levied against the vault door and the night depository. The trial judge declared that Allied Stores must pay all other taxes levied upon its real property.

The judgment is affirmed.

FARRIS and SWANSON, JJ., concur.