[No. 27136. Department Two. September 29, 1938.]

F. L. REINOEHL *et al., Appellants,* v. G. J. VERVAEKE *et al., Respondents.*

CLAUDE A. MARSH, *Appellant,* v. PERDIVER MINING CORPORATION *et al., Respondents.*[1]

[1]Reported in 82 P. (2d) 861.

*L. H. Brown, Albert I. Kulzer,* and *John Huneke,* for appellants Reinoehl *et al.*

*T. T. Grant,* for appellant Marsh.

*John T. Raftis,* for respondents.

BLAKE, J.—These cases involve the ownership of certain mining machinery and equipment now located upon mining claims in Stevens county, owned by defendants. What we regard as the controlling facts are not in dispute.

July 25, 1934, the defendants executed and delivered to one Quackenbush, "his successors and assigns," an option to purchase the claims for $75,000, payable $5,000, August 13, 1934, and $1,500, February 1, 1935.

(With subsequent payments due under the option, we are not concerned.) The agreement provided that, in case of default by the optionee, all payments made under the option "and all work done and *improvements placed upon said property shall be and remain the property*" of the optionors.

On August 17, 1934, Quackenbush leased to one Wickstrom "the surface dumps and backfills in stopes, tunnels and drifts," on certain of the claims, for a term of five years, with rights of extension upon fulfillment of conditions with which we are not concerned. This lease contained the following covenant on the part of the lessee:

"At the expiration or sooner termination of this agreement to surrender said premises, and leave thereon all of the machinery, including Diesel power, tools and equipment now on said premises or brought thereon by the lessee to be used in the execution and performance of this agreement, the title and ownership to which shall automatically vest in the lessor when the same is brought upon the premises; Provided, however, that trucks, camping equipment, personal effects and ore handling equipment and secondary, accessory, or portable milling equipment is excluded from the provisions hereof and may be removed from the demised premises by the lessee at the termination of this agreement."

Through Wickstrom, one Crawford, a member of the law firm of Cuthell, Hotchkiss & Mills, of New York City, became interested in working the properties covered by the lease from Quackenbush. Crawford organized the Perdiver Mining Corporation, of which he became a trustee and Wickstrom president. The lease from Quackenbush was assigned to the corporation. The Perdiver Corporation purchased a large amount of machinery and mining equipment, which was installed on the property. A part of the machinery so installed consisted of a Diesel engine

and five motors, with appurtenances, purchased under conditional bill of sale from Cascade Machinery & Electric Company. The purchase price was five thousand dollars. The engine was installed on a concrete base, to which it was attached by bolts embedded in the concrete.

The Perdiver Corporation operated under its lease from Quackenbush until March, 1935. In the meantime, Quackenbush having failed to make the payment of fifteen hundred dollars due under the option on February 1st, the defendants declared a forfeiture and entered into possession of the property.

The Perdiver Corporation had by then made all but the last payment, amounting to $850 and interest, due under its contract with Cascade Machinery & Electric Company. The former was also indebted to the latter on open account, in the approximate sum of four hundred dollars. Through Lawrence H. Brown, who had been representing the Crawford and Perdiver interests locally, arrangements were made to pay this open account and the balance due under the conditional sales contract. The transaction was handled in the following manner: Cascade Machinery & Electric Company drew a draft on Martin J. Her, the real and one of the named plaintiffs in the first of these actions, for $1,283.48. Accompanying the draft was an assignment to Her of the conditional sales contract, and also a bill of sale transferring to him the Diesel engine, motors, and appurtenances. The bill contained a warranty of title, "save claims by Perdiver Mining Company."

In the meantime, it appears that the law firm of Cuthell, Hotchkiss & Mills, had been reorganized as Cuthell, Appleby, Osterhout, Crawford & Mills. Martin J. Her was a member of the staff. So it may be assumed that, in carrying out the transaction with

Cascade Machinery & Electric Company, Her was acting as agent for Crawford and the people he represented.

The first of the above entitled actions was instituted by Her to recover possession of the property to which he acquired title under the bill of sale from Cascade Machinery & Electric Company. From judgment dismissing the action, he appeals.

There are several theories upon which it is thought this judgment can be sustained. Before discussing them, it is well to note that the title to the property never passed to the vendee, Perdiver Mining Corporation. It remained in Cascade Machinery & Electric Company until transferred to Her.

But respondent says that, under the circumstances, Her acquired the title in trust for Perdiver Mining Corporation. There is, however, no evidence that Her made the final payment with funds of the mining company. On the contrary, it is clear that the money with which the payment was made was furnished by him or his principals, as individuals. That they were interested in the Perdiver Corporation, did not preclude them from paying the balance due under the conditional bill of sale and taking title to the property. Nor does the fact that Crawford was a trustee of the mining company alter the right. See *Kidder v. Wittler-Corbin Machinery Co.*, 38 Wash. 179, 80 Pac. 301. It may well be that, as to creditors of the company, they would be held accountable as trustees of the property. But, even so, they would not be required to surrender the property until they had been reimbursed in the amount they paid on the purchase price. *Duarte v. Minnick*, 85 Wash. 539, 148 Pac. 600.

It is suggested that the judgment may be sustained under the trust fund doctrine, because the

mining company was insolvent. But that doctrine can be invoked only at the behest of creditors of the company. And respondents are not creditors of the Perdiver Mining Corporation. There was no contract between it and them. Their claims are based solely upon the forfeiture clause contained in their option to Quackenbush. It was upon his default, not Perdiver's, that respondents declared a forfeiture and took possession.

There is a suggestion that Quackenbush forfeited the lease to Perdiver Corporation. The record, however, discloses nothing more than an abortive attempt on his part to declare a forfeiture.

██ No doubt, under the holdings of this court, the Diesel engine and motors constituted improvements, as contemplated by the option from respondents to Quackenbush. *Siegloch v. Iroquois Mining Co.,* 106 Wash. 632, 181 Pac. 51. But they were not fixtures. *Reeder v. Hudson Consolidated Mines Co.,* 118 Wash. 505, 203 Pac. 951.

Respondents' right to claim "improvements," under their option to Quackenbush, is wholly dependent upon Quackenbush's right to retain the property under the above quoted clause of his lease to Perdiver Corporation. It is conceded that respondents have succeeded to whatever rights Quackenbush ever acquired in the machinery and equipment installed on the property by the mining company. But what rights did Quackenbush ever acquire? It may be conceded that all property (not falling within the category of the proviso in the clause quoted) bought and paid for by Perdiver Corporation became, upon installation, the property of Quackenbush. But Quackenbush did not acquire title, upon installation, to any property bought by Perdiver Corporation upon con-

ditional bill of sale. See *Allen v. Griffin,* 132 Wash. 466, 232 Pac. 363; *Provident Mutual Life Ins. Co. v. Smith,* 175 Wash. 356, 27 P. (2d) 580. We think it is clear that Quackenbush, under that clause of his lease to Perdiver Corporation, never acquired any title to or interest in the property described in the conditional bill of sale from Cascade Machinery & Electric Company. Consequently, the respondents acquired none by the so-called transfer by Quackenbush of all his rights to them.

 Respondents attempt to sustain the judgment on the theory of an estoppel. The facts relied upon are that, subsequent to the forfeiture of the Quackenbush option and the surrender of possession of the property to respondents, they and Crawford entered into negotiations for a new option; that Crawford caused to be organized a corporation known as Huckleberry Mountain Mining Corporation; that respondents executed an option to that company upon the mining claims, machinery, and equipment, including that installed by Perdiver Corporation. This option, executed May 1, 1935, called for a payment of $750 on May 15, 1935. The payment was not made. There seems to be no question that, at the time that payment was due, the Huckleberry Mountain company expressly or impliedly abandoned its rights under the option. At any rate, its rights were subject to forfeiture. And, it may be noted, respondents, shortly afterwards, dealt with the property as though the option to the Huckleberry Mountain company did not exist.

The argument seems to be that, by these negotiations and the express terms of the option, Crawford is estopped from now claiming any right to the Diesel engine and motors described in the conditional bill of sale. At least one element of estoppel is wholly

lacking in the proof—detriment or loss to respondents flowing from the negotiations with Crawford or resulting from the execution of the option to Huckleberry Mountain Mining Corporation. *Butler v. Supreme Court of Independent Order of Foresters,* 53 Wash. 118, 101 Pac. 481, 26 L. R. A. (N. S.) 293; *Edwards v. Surety Finance Co.,* 176 Wash. 534, 30 P. (2d) 225.

The case of Marsh against Vervaeke arises upon the controversion of an answer to a writ of garnishment directed to Vervaeke and issued upon a judgment theretofore obtained by Marsh against Perdiver Mining Corporation. After trial of the issues, the court dismissed the writ and discharged the garnishee defendants. Marsh appeals.

As we have seen, respondents' rights in the machinery and equipment installed or brought upon the mining claims derive entirely from the rights of Quackenbush. His rights to such property arise solely under the terms of his lease to Perdiver Corporation. Adverting to the provisions of the lease hereinbefore quoted, we find that Perdiver Corporation, "at the expiration or sooner termination" of the agreement, had the right to remove " . . . ore handling equipment and secondary, accessory or portable milling equipment . . ." In other words, Quackenbush never acquired any title or interest in property falling within the described categories. Hence, respondents could acquire none through that source. All of such property yet belongs to Perdiver Mining Corporation (except such as may be subject to the rights of vendors under conditional bills of sale or their assignees), and is subject to garnishment. The items of property falling within the categories described in the proviso of the lease are specifically enumerated in the abstract of Wickstrom's testimony. (Abs. p. 124, line 12, to

p. 127, line 4.) It is unnecessary here to set out the list in detail. Suffice it to say that we hold the property there described subject to the writ of garnishment.

■ There is one other contention of respondents which requires notice. These causes were tried in June, 1936, and were taken under advisement by the court. No decision having been rendered, respondents, in October, interposed a motion to reopen for the introduction of further evidence. The motions were granted. The additional evidence established the following facts: That the sheriff of Stevens county sold the personal property in controversy to one McLean for $190.35, the amount of the 1935 taxes and costs of sale; that respondents purchased the property from McLean for two hundred dollars. The contention is made that this sale to McLean and purchase by respondents establish a paramount title to the property in the latter. We think the contention does not merit discussion. The most respondents should be allowed to claim by reason of this transaction is a prior lien on the property in the amount of $190.35, with interest.

The judgments are reversed, and the causes remanded with directions to enter judgments in accordance with this opinion.

BEALS, MILLARD, and ROBINSON, JJ., concur.

STEINERT, C. J. (dissenting) — I dissent upon a ground which the majority, in the concluding portion of its opinion, brushes aside as having no merit.

It is conceded that the property in controversy was sold by Stevens county to one R. N. McLean for taxes for the year 1935. A new title was thereby initiated paramount to all claims of any of the parties to this action. It is further conceded that respondents Ver-

vaeke thereafter purchased the property from McLean for valuable consideration; no claim of fraud, collusion, or connivance between respondents and McLean is suggested. Respondents Vervaeke therefore became possessed of the title to the property, regardless of all preexisting claims. The situation is the same as though the Vervaekes, in the absence of all present litigation, had simply purchased the property as a consequence of tax foreclosure proceedings.

I dissent.

