[No. 27422. Department One. May 4, 1939.]

MANLEY KNUTZEN, *Respondent*, v. TRUCK INSURANCE EXCHANGE, *Appellant.*[1]

[1]Reported in 90 P. (2d) 282.

*Bayley & Croson, George W. Martin,* and *Frank S. Bayley, Jr.,* for appellant.

*Abrams & McCush,* for respondent.

STEINERT, J.—Prior to the commencement of this action, a judgment was obtained against the present plaintiff in a suit brought to recover damages for the death of a person who had been struck by a motor vehicle owned and operated by plaintiff. After satisfying that judgment, plaintiff commenced this suit for indemnity against defendant herein upon its policy of liability and collision insurance issued to plaintiff prior to the time of the collision. Upon a trial of the present action by the court, findings of fact were made, conclusions of law were established, and a judgment in favor of plaintiff was entered. Defendant has appealed.

The material facts are not in dispute and may be stated as follows: Respondent Knutzen and his parents owned a dairy farm north of Bellingham. Delivery of milk from the farm to Bellingham customers

was made by respondent in a second-hand 1933 International truck owned by him.

On August 20, 1936, respondent applied to appellant for liability and collision insurance covering the truck. The policy was issued September 3, 1936, and was made effective as of August 20th, to extend for a term ending November 20th of the same year. The premium charges for the policy amounted to $24.80, of which respondent paid the sum of $12.40. The policy contained a provision permitting appellant insurance company to cancel the contract of insurance, so far as the insured was concerned, upon *five* days' written notice mailed to the insured at the address stated in the policy.

September 3, 1936, which was the date of issuance of the policy, respondent made application to appellant for additional features of coverage, and at the same time asked to have the policy extended to include a new 1936 International truck, which he had just purchased. On October 6, 1936, appellant, in compliance with the application, executed and sent to respondent a form of endorsement used in such cases, and instructed him to attach it to his policy. The endorsement extended the entire coverage to the new truck and was made effective as of September 3, 1936, to continue for a term ending December 3rd of the same year. The additional premium charges for the extended insurance amounted to $20.90, of which respondent paid $19. Thus, the total amount of unpaid premium charges for the original policy and the extension agreement was $14.30.

At the time of making application for the extended insurance on September 3rd, respondent also requested that appellant file the policy, together with the extension endorsement, in the office of the state department of public works, for the reason that he intended to apply to the department for a permit to operate the new

truck under the provisions of an existing act of the legislature relating to motor carriers of freight for hire. Laws of 1935, chapter 184, p. 883. Section 5 of that act, p. 886, provides that no such carrier shall operate in this state without obtaining from the department a permit so to do, and § 16, p. 890, provides that the department, in granting such permit, shall require the carrier to procure and file with the department liability and property damage insurance, or else to deposit satisfactory security for the reasonable protection of the public against damage and injury for which such carrier may be held liable by reason of the operation of motor vehicles.

A rule of the department required that all such policies should contain a provision to the effect that the policy was to continue in full force unless and until cancelled by at least *fifteen* days' written notice served on the insured and on the department, the time to commence to run from the date that notice was actually received by the department. Another rule provided that all such policies should carry an endorsement, which will hereinafter be referred to as the statutory endorsement, in the form prescribed by the department, specifying that the policy shall not expire, and that cancellation thereof shall not take effect, until after such *fifteen* days' notice.

However, the legislative act further declares that its provisions, except where otherwise specifically provided, and except the provisions with reference to licenses, shall not be applicable to motor vehicles owned and operated by farmers in the transportation of their own farm, orchard, or dairy products from point of production to market. Laws of 1935, chapter 184, p. 885, § 3 (e).

Pursuant to respondent's request, and relying upon his statement that he would apply for a permit, appel-

lant filed a copy of the policy, together with the statutory endorsement, in the office of the department. Respondent, however, never made application for such permit, nor was one ever issued to him, and it is a conceded fact that it was not necessary for respondent to have a permit in order to conduct the business in which he was then engaged; he was not a contract carrier.

Respondent having failed to pay the balance of the premium owing by him, appellant, on October 21, 1936, sent him written notice advising him that the policy would be cancelled on October 28, 1936, but that, if remittance were received on or before the last mentioned date, the notice of cancellation would be rescinded. On October 27, 1936, appellant sent respondent a similar notice, but fixed November 3rd as the cancellation date. Respondent received both notices, but paid no attention to either of them, although, by his own admission, he fully understood their purport.

November 8, 1936, which was five days after the effective date of the second notice, respondent, while operating the new truck, became involved in the accident in which the aforementioned deceased person received the injuries from which he died the next day.

Respondent at once notified appellant of the accident, although he appears to have had some doubt as to whether he was then really protected by the policy. On receipt of the notice, appellant immediately instructed its Bellingham agent to investigate the matter. At that time, however, appellant was of the belief that respondent had applied for and was operating as a contract carrier under permit from the state, and that, to terminate its liability on the policy, it was necessary to give the statutory fifteen-day notice. Accordingly, on November 9, 1936, appellant notified the department that the policy would be cancelled on November 25th.

On November 11, 1936, appellant's adjuster, who had been sent to investigate the accident, discovered that respondent's truck did not carry the department's iden-

On November 11, 1936, appellant's adjuster, who had no permit to operate as a contract carrier. After checking the matter further with the department and learning that no permit had ever been issued to respondent, appellant, on November 12th, notified the department to disregard its former "binder" and to return to it the copy of the policy which it had previously filed in that office. The policy was immediately surrendered to appellant by the department. At the same time, appellant discontinued its investigation and, by notice to respondent, disclaimed all liability under the contract of insurance.

In January, 1937, an action for damages was instituted against respondent by the representative of the person whose death had resulted from the collision. Respondent tendered the defense of the action to appellant. Again disclaiming all liability, appellant refused the tender. Respondent then employed his own attorneys to defend the action, which resulted, as already stated, in a judgment against respondent.

In this action, respondent seeks to recover the total amount expended by him in satisfaction of the judgment, in payment of attorney's fees incurred, and for repairs to his own truck.

The question to be determined upon this appeal is whether or not, on November 8, 1936, the day on which the accident occurred, the policy here involved was in full force and effect. The answer to that question depends upon whether, under the facts stated, appellant was protected by, and entitled to rely upon, the five-day notice of cancellation which it had given to respondent.

Viewing the matter from the standpoint of

the contract between the parties, as expressed in the original policy, and leaving out of consideration, for the present, the statutory endorsement thereon and the fifteen-day notice given pursuant thereto, we are clearly of the view that the policy was terminated by the five-day notice sent to respondent on October 27, 1936.

Respondent was in default in payment of the premium. Appellant sent the notice of cancellation strictly in accordance with the provisions of the policy. Respondent received the notice, understood its import, but failed to pay the premium within the time designated. The notice, therefore, became final and effective and, as a result, worked a rescission of the policy. *Ralston v. Royal Ins. Co.*, 79 Wash. 557, 140 Pac. 552; *Bergson v. Builders' Ins. Co.*, 38 Cal. 541; *American Glove Co. v. Pennsylvania Fire Ins. Co.*, 15 Cal. App. 77, 113 Pac. 688.

■ The situation was not altered by the fact that the statutory endorsement which was attached to the copy of the policy and filed with the department required a fifteen-day notice of cancellation. The provisions of Laws of 1935, chapter 184, p. 890, § 16, with reference to liability and property damage insurance, were enacted for the benefit of the public; it is so indicated in the act itself. But, in this case, the rights of the public are not involved. The statute and its requirements never, in fact, became applicable to appellant, and no liability or obligation against it ever arose thereunder. The fifteen-day notice, therefore, has no bearing upon the terms of the contract made between respondent and appellant.

Whether the individual who was injured, or his legal representative upon the death of the injured person, could have invoked the statute or the attempted compliance therewith by appellant, is not now before us.

This is solely a matter between the policy holder and the insurance company.

■ The principal contention of respondent is that appellant did not intend that the five-day notice, as required by the policy, given on October 27, 1936, should terminate the contract; for, otherwise, it would not have entered upon the investigation of the accident nor would it, on November 9th, have given the fifteen-day notice required by the statute in cases involving carriers under permit.

If the matter be considered as one of intent at the time the five-day notice was given rather than one of waiver by subsequent conduct, there can be little doubt as to appellant's intention to cancel the contract. The form of the notice expressed the intent. It unequivocally indicated to respondent that it was appellant's intention that the policy should cease after the five-day period had elapsed. If appellant had the power to cancel the contract and exercised that power in the manner prescribed by the policy, its reason or motive for giving notice would be immaterial. The essence of a notice, when sufficient in form and content, is its objective consequence upon the one who receives it, not the subjective attitude of the one who gives it. 46 C. J. 538.

Respondent in his amended reply pleaded waiver and estoppel by virtue of appellant's alleged acceptance of liability under the terms of the policy and the extension endorsement thereon. Such alleged acceptance is predicated upon the steps taken by appellant after the accident.

■ A waiver is the voluntary relinquishment of a known right. *Reynolds v. Travelers Ins. Co.*, 176 Wash. 36, 28 P. (2d) 310; *Eakle v. Hayes*, 185 Wash. 520, 55 P. (2d) 1072; *Shafer Bros. Land Co. v. Universal Pictures Corp.*, 188 Wash. 33, 61 P. (2d) 593.

In the case at bar, the evidence is undisputed that appellant, when it entered upon its investigation of the accident and when it subsequently sent to the department the fifteen-day notice of cancellation, did not know that it was under no liability by virtue of the statute or that the giving of a statutory notice was unnecessary under the circumstances. It, therefore, did not waive its right to stand upon the five-day notice which it previously had given respondent.

As to estoppel, there is no evidence that respondent was prejudiced by the acts of appellant. Whatever appellant did by way of investigation of the accident was for respondent's benefit, and the fifteen-day notice which appellant gave to the department did not affect respondent at all. In order to invoke an estoppel against another, one must show that he has relied on the acts of the other to his prejudice. *Butler v. Supreme Court of Foresters*, 53 Wash. 118, 101 Pac. 481, 26 L. R. A. (N. S.) 293; *Raynor v. Scandinavian-American Bank*, 122 Wash. 150, 210 Pac. 499, 25 A. L. R. 716; *Edwards v. Surety Finance Co.*, 176 Wash. 534, 30 P. (2d) 225; *Debentures Inc. v. Zech*, 192 Wash. 339, 73 P. (2d) 1314; *Reinoehl v. Vervaeke*, 196 Wash. 348, 82 P. (2d) 861.

The judgment is reversed, with direction to dismiss the action.

Blake, C. J., Main, Jeffers, and Robinson, JJ., concur.