[No. 31800. Department One. November 2, 1951.]

SMELT FISHERMEN'S ASSOCIATION, *Respondent*, v. OLE SOLEIM, *Appellant*.[1]

[1]Reported in 236 P. (2d) 1057.

*Hallin & Hallin,* for appellant.

*James O. Ballou* and *Melvin C. Rooney,* for respondent.

DONWORTH, J.—This is an appeal from a judgment for plaintiff in an action to recover the price of a quantity of smelt sold to defendant. The action was tried to the court sitting without a jury. At the conclusion of the evidence the court made findings of fact and conclusions of law. Judgment was entered for the plaintiff in the amount of $999.49, from which the defendant has appealed.

No statement of facts has been filed and the evidence is not available for our consideration. The only question presented by the assignments of error is whether the conclusions of law and judgment are supported by the findings of fact.

The essential facts, as found by the trial court, are these: Appellant, on February 24, 1950, ordered 200 fifty-pound boxes of Columbia river smelt from respondent, upon respondent's assurance that they were fresh. The agreed price was $6.70 per box. Appellant took delivery of the smelt in closed boxes at Clatskanie, Oregon, on February 26, 1950, and transported them by truck to his place of business in Kelso, Washington, whence one hundred seventy-seven boxes were·immediately shipped by appellant to his customers. At the time the smelt were delivered to appellant, they were unfit for human consumption, but because appellant did not inspect them he was unaware of it. The day after taking delivery of the fish he was informed by various customers that the smelt were not fit for human consumption.

At that time appellant still had twenty-three boxes of smelt under refrigeration at his place of business. Upon inspection, he discovered that they were spoiled and at his instance the president.and manager of respondent inspected these fish on the same day. They told appellant to send five boxes back to respondent so that they could be shown to the fishermen and to dispose of the other eighteen. He complied with their instructions.

About five days after delivery of the smelt, respondent's manager demanded payment in full for the two hundred boxes. A controversy arose between the parties as to appellant's liability for the spoiled fish. Respondent's manager told appellant that if he did not pay for the smelt he would get no more smelt from respondent and that he (the manager) would work for respondent for nothing to see that appellant got no more smelt. Appellant paid in full without protest.

Respondent subsequently delivered more smelt to appellant pursuant to appellant's order. When payment for the subsequent deliveries of smelt became due, appellant deducted from the amount payable the sum of money he had previously paid for the spoiled fish ($1,222.09). Respondent instituted this action to recover that amount.

Appellant in his answer asserted a set-off or counterclaim in which he claimed damages for the loss of two hundred boxes of smelt and the costs of shipping the spoiled fish to his customers totaling $1,477.20 and for reimbursement for Fish Commission privilege taxes amounting to $189.10 paid by him to the state. There is no controversy as to the latter item since the trial court found that respondent agreed to pay this tax.

Respondent in its reply denied the allegations contained in appellant's set-off or counterclaim.

The trial court entered judgment for respondent according to the prayer of the complaint, less the price ($6.70 per box) of the five boxes taken back by respondent and less the amount of money owed by respondent to appellant as reimbursement for the tax payments. Except as to these two items appellant's set-off or counterclaim was disallowed.

Appellant asserts that the findings of fact do not support the judgment since they show that he is entitled to recover, as damages, the purchase price of the spoiled fish. Respondent takes the position that, since there is no finding as to the value of the spoiled smelt as delivered to appellant, no damages can be awarded. The only finding bearing directly on the question is finding of fact No. IX, the pertinent portion of which is as follows:

" . . . that at the time of the delivery of the said two hundred boxes of smelt to defendant by plaintiff all of the same were spoiled and unfit for human consumption."

It thus appears that the trial court made no finding as to the value of the spoiled smelt as delivered to appellant. In the absence of proof of damages, ordinarily only nominal damages can be recovered even though, as here, the warranty and its breach are evident. *Burnley v. Shinn*, 80 Wash. 240, 141 Pac. 326.

The rationale of the rule, as applied to this case, is that the goods, though useless for one purpose, may well have had substantial value for other purposes. In his brief respondent makes such a contention, suggesting that the spoiled smelt might have had some value as mink feed, sturgeon bait or fertilizer. However, that rule can have no application here. The trial court found that the officers of respondent looked at twenty-three boxes of smelt the day after delivery, requested that five boxes be returned to respondent's place of business at Clatskanie, Oregon, to show to the Association's fishermen and told appellant to dispose of the remaining eighteen. Respondent, having treated the smelt as valueless in dealing with appellant, cannot now be heard to attack appellant's action on the ground that, although the fish were found to be unfit for human consumption, they were not found to be valueless. Nor, under the circumstances described in the findings, does it make any difference if this is treated as an action for rescission. Appellant was not precluded from rescinding the contract because of his failure to offer to return the remaining one hundred seventy-seven boxes of smelt which he had shipped to his customers, since respondent's officers regarded the smelt as having no value.

We are of the opinion that the trial court's finding that all of the smelt were unfit for human consumption, coupled with the finding that respondent's president and manager both treated them as being of no value, compels us to regard the smelt as totally worthless when delivered to appellant.

Respondent further contends that appellant waived the breach of warranty by paying in full for the smelt with the knowledge that the warranty had been breached.

The following findings of fact are pertinent in regard to this question:

VI. "That defendant during period aforesaid, and for some years prior thereto, took approximately 40 percent of plaintiff's catch, and during said smelt season in said Columbia River approximately 95 percent of all smelt purchased by defendant and sold in his trade were purchased from plaintiff."

VII. "That defendant by phone calls during said Columbia River fishing season of 1950, ordered from 450 to 500 boxes of smelt per week; plaintiff had other orders of like nature, and plaintiff from day to day divided the fish catch of the Association members with defendant and other purchasers in such manner and way as the manager of the plaintiff Association deemed advisable; and there was no obligation on defendant to purchase nor upon plaintiff to sell to defendant any fixed number of boxes of smelt."

XV. "When defendant paid plaintiff for the smelt on March 9, 1950 he had full knowledge of the fact that the warranty had been broken at its inception—that the fish were unfit for food."

XVI. "Here there were no standing orders or contract between the parties. Plaintiff was not obligated to sell, nor was defendant compelled to purchase fish from plaintiff. While plaintiff had a large number of fishermen within its membership engaged in fishing smelt, there appears to have been others so engaged at that time. Plaintiff did not threaten to do an illegal act or breach a contract when plaintiff's manager told defendant that if he did not pay for the fish he would see that defendant received no more fish from the Association."

XVII. "From the evidence I cannot see that plaintiff's manager's threats made at the time the payment was made, if such had been carried out, would have resulted in a serious business loss to defendant. Such conclusion is, in part, based upon the fact that no contractual relation existed between these parties respecting the sale and purchase of the smelt which would thereafter be caught by the members of the Association. And again, it was not shown that plaintiff's fish catch was essential to defendant if he was to continue in such business, and the payment was not made under protest."

■■ We are of the opinion that it cannot be inferred from the above findings of fact that appellant waived the breach of warranty. We have frequently stated that a waiver is a *voluntary* relinquishment of a known right. *Knutzen v. Truck Ins. Exchange,* 199 Wash. 1, 90 P. (2d) 282; *Constantino v. Moreschi,* 9 Wn. (2d) 638, 115 P. (2d) 955.

It is impossible to escape the inference that appellant paid for the spoiled fish, not because he excused their worthless condition, but because he had reason to believe that his business would be damaged if he did not pay.

While the trial court found that the threats made by respondent's manager, if carried out, would not have resulted in a serious business loss to appellant, it is obvious that such conduct on respondent's part would have resulted in much inconvenience.

Gill net fishing for smelt on the Columbia river ends about March 10th each year. This payment was made on March 2, 1950. Appellant obtained 95% of his supply of smelt from respondent. If this supply were cut off near the end of the season, appellant might or might not have been able to obtain sufficient smelt from other sources to keep his customers supplied.

The vital question is not whether appellant *would have* suffered a serious business loss (the doctrine of business compulsion having no pertinency here), but whether appellant paid because he *reasonably thought* he would have serious trouble if he did not. Under the conditions with which appellant was then confronted, we cannot regard the payment as a voluntary waiver of respondent's breach of warranty.

The case of *Hodges v. Cole,* 117 S. W. (2d) (Tex. Civ. App.) 822, is particularly helpful here. In that case, suit was brought against defendants on a note given as the purchase price of a tractor. Defendants asserted that the tractor was defective. One of the defendants had made a payment on the note after acquiring knowledge of the defects. The defendant had made the payment so as not to become involved

in a lawsuit over the sale of some cotton on which plaintiff held a chattel mortgage. The court held that the payment did not constitute a waiver because it was not a "voluntary act implying a purpose and intention to forego something of value or an advantage to which he had a legal right."

Since the findings of fact show a warranty of freshness, a breach of that warranty, that the smelt were valueless as delivered to appellant and since we hold that the breach of warranty was not waived, we conclude that the findings do not support the judgment.

Appellant is entitled to recover the full price of the two hundred boxes of smelt, $1,340, in addition to $189.10 as reimbursement for tax payments.

Respondent is entitled to recover $1,222.09, the amount due on the later shipment of smelt for the recovery of which it instituted this action.

The judgment is, therefore, reversed and the cause remanded with instructions to enter judgment for appellant in the sum of $307.01.

MALLERY, GRADY, HILL, and WEAVER, JJ., concur.

December 12, 1951. Petition for rehearing denied.