RELIANCE INSURANCE COMPANY,
Plaintiff-Respondent,

v.

Donald R. ECHOLS and Claudine
Echols, Defendants-Appellants,

and

George Ray, d/b/a Ray's Trucking, and
Larry Roberts, Defendants.

No. 10443.

Missouri Court of Appeals,
Southern District.

July 17, 1980.

Motion for Rehearing and/or to Transfer
to Supreme Court Denied
Aug. 11, 1980.

Application to Transfer Denied
Sept. 9, 1980.

W. Ray Daniel, B. H. Clampett, Daniel, Clampett, Rittershouse, Dalton & Chaney, Springfield, for defendants-appellants.

Glenn A. Burkart, Richard E. Dorr, Mann, Walter, Burkart, Weathers & Warden, Springfield, for plaintiff-respondent.

FLANIGAN, Chief Judge.

Reliance Insurance Company, plaintiff-respondent, brought this action seeking a declaratory judgment to the effect that its "general liability-automobile policy" number GA 1435505, does not obligate it to furnish a defense or pay any judgment which might be obtained by the plaintiffs in civil action 71488. In the declaratory judgment action the defendants are Donald R. Echols, Claudine Echols, George Ray and Larry Roberts.

In civil action 71488 Mr. and Mrs. Echols sued Ray and Roberts for personal injuries arising out of a collision which occurred on October 7, 1973, involving a truck owned by Ray and driven by Roberts and a car occupied by Mr. and Mrs. Echols. Earlier in the year the truck was one of the vehicles cov-ered by the Reliance policy. The trial court, sitting without a jury, entered judgment in favor of plaintiff Reliance and against the defendants on the ground that Reliance had cancelled the policy on October 4, 1973. Defendants Donald Echols and Claudine Echols appeal.

Appellants contend that the ruling of the trial court that the policy was cancelled on October 4, 1973, was erroneous for the following reasons:

1. The policy was purportedly cancelled for nonpayment of premium and in fact the premium had been paid in full in April 1973;

2. The premium was financed under a premium finance agreement between Afco Credit Corporation and Ray. When Reliance was notified by Afco of the premium finance agreement, Reliance added an endorsement to the policy which erroneously stated that the premium finance agreement authorized Afco, in the event of default by Ray in the payment of his installment loan to Afco, to cancel the policy on behalf of Ray. In fact the premium finance agreement contained no such authorization;

3. Reliance's cancellation of the policy was not justified by the document which Afco sent to Reliance advising Reliance that Afco was financing the premium;

4. The premium for the policy, for a policy period of one year, was $4,861. When Afco notified Reliance of its request for refund of the unearned premiums, Ray owed Afco $1,740.19. After the purported cancellation on October 4, 1973, the unearned premium totaled $3,686.19. Reliance "had more than enough money on hand to pay Afco $1,740.19 and still have full payment of the premium." Accordingly Reliance was not "justified in purporting to cancel the policy for nonpayment of premium";

5. Under the premium arrangement between Afco and Ray, Ray was to make monthly installment payments to Afco. Ray sent the July installment to Afco's agent, Squibb, but Squibb improperly applied the payment to the indebtedness of

Ray to Squibb. Thereupon Ray "paid the July installment a second time." In so doing, Ray made an advance payment of the August installment and thus Ray was not in default when Afco notified Reliance that Ray was in default for nonpayment of the August installment.

Appellants' contentions, none of which is valid, require a detailed statement of the salient facts and governing documents.

In January 1973 Ray, an earth-moving contractor, made arrangements to procure five insurance policies through Squibb Insurance Agency of Springfield, Missouri. Four of those policies, including the instant policy, were issued by Reliance. The premiums for the five policies totaled $6,262. Ray was unable to pay that amount and financing arrangements were necessary. Ray arranged with Squibb that a down payment of $1,252.40 would be made and the balance of the premiums ($5,009.60) would be financed through a "premium finance agreement" entered into by Ray and Afco Credit Corporation.

With regard to the down payment of $1,252.40, Ray himself paid $1,000 and

Squibb paid $252.40. Squibb treated the latter as a loan by it to Ray and carried that loan as an "open account." The amount which Ray borrowed from Afco was $5,009.60, plus a finance charge of $180.97, for a total of $5,190.57. The latter amount was to be paid to Afco by Ray in nine monthly installments of $576.73 each, with the first installment due on February 26, 1973.

In April 1973 Reliance received payment in full of the premiums on the four policies, including the instant policy, which it issued to Ray. That payment consisted of the down payment of $1,252.40 and the $5,009.60 which Ray had borrowed from Afco.

Material provisions of the "premium finance agreement" entered into by Ray and Afco on March 2, 1973, are set out below.[1]

Reliance policy number GA 1435505 was issued by Reliance on February 5, 1973. The policy was issued for a term of 12 months beginning January 25, 1973. Material provisions of the policy are set out below.[2]

1. PREMIUM FINANCE AGREEMENT
(between Ray and Afco)
(dated February 19, 1973, and accepted by Afco on March 2, 1973)

[Ray] promises to pay [Afco] $5,190.57 in accordance with the payment schedule (nine monthly installments of $576.73, the first installment due February 26, 1973).

1. [Ray] assigns to [Afco] as security for the total amount payable hereunder any and all unearned return premiums . . . which may become payable under the policies listed in the schedule. . . .

6. [Ray] agrees in the event of a default in payment of any installment due hereunder . . . the unpaid balance due hereunder shall be immediately due and payable. In such event Afco may immediately terminate the agreement and the unearned premiums on the financed policies listed above shall be payable by the insurance companies to Afco upon Afco's request. . . . Any sum received from an insurance company shall be credited to the unpaid balance due; any surplus shall be paid over to the party entitled to same; in case of a deficiency, [Ray] shall pay the same with interest.

9. [Ray] agrees that [Squibb] through whom the above policies were issued is not the agent of Afco.

2. GENERAL LIABILITY–AUTOMOBILE POLICY

No. GA 1435505
(issued by Reliance to Ray for a policy period of one year commencing January 25, 1973)
Conditions

1. *Premium.* All premiums for this policy shall be computed in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

Premium designated in this policy as "advance premium" is a deposit premium only which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period (or part thereof terminating with the end of the policy period) designated in the declarations as the audit period the earned premium shall be computed for such period and, upon notice thereof to [Ray], shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the company shall return to [Ray] the unearned portion paid by [Ray].

[Ray] shall maintain records of such information as is necessary for premium computation and shall send copies of such records to the company at the end of the policy period and at

Under the premium finance agreement the first installment ($576.73) payable by Ray to Afco was due on February 26, 1973. Pursuant to an agreement between Ray and Squibb, Squibb made that payment for Ray. The amount of the payment was added to Ray's "open account" with Squibb, so that Ray became indebted to Squibb in the amount of $829.13 ($576.73 plus the prior advance of $252.40).

On March 2, 1973, Afco mailed to Reliance a "notice of advanced premium." The notice informed Reliance that Afco would make a loan to Ray financing the premiums on the four listed Reliance policies, including the instant policy, which Ray had obtained through Squibb. Other material portions of that notice are set forth below.[3]

On March 30, 1973, Reliance attached an endorsement to policy GA 1435505. Material portions of that endorsement are set forth below.[4]

Ray paid to Afco, although belatedly, the installments which were due on March 26, April 26, May 26, and June 26. These payments were made by checks payable to Afco itself.

With respect to the July 26 installment, Ray's wife, Lucille Ray, sent to Squibb a check in the amount of $576.73, signed by Ray. The check was payable to Squibb. Squibb received that check on August 8, gave Ray credit therefor on his "open account," and reduced Ray's indebtedness to Squibb to $252.40.

According to the testimony of Squibb's employee, Gary Nickel, whose version the trial court accepted, Ray ascertained from his wife that she had sent the $576.73 check to Squibb rather than to Afco. Ray asked Nickel to forward the check to Afco but, after further discussion, Ray agreed that the check would be credited to his open account with Squibb, and Ray himself would pay, belatedly, the July 26 install-

such times during the policy period as the company may direct.

11. *Cancellation.* . . . This policy may be cancelled by the company by mailing to [Ray] at the address shown in this policy, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. . . . The effective date and hour of cancellation stated in the notice shall become the end of the policy period. . . .

. . . If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

3.   NOTICE OF ADVANCED PREMIUM
(mailed by Afco to Reliance on March 2, 1973)
To [Reliance]:
Afco will advance the premium on the policy described above subject to the conditions herein. In consideration of our advancing this premium [Ray] has assigned to [Afco] any and all unearned premiums . . . which may become payable under the policy.

In consideration of Afco advancing the premium [Reliance] agrees that:
A. If [Ray] fails to pay [Afco] and [Afco] requests refund, or if the policy is for any

reason cancelled by [Reliance] or authorized agent, [Reliance] will pay Afco, with or without surrender of the policy:
1. On Deposit or Provisional Premium Policies the lesser of the following:
(a) The gross pro rata unearned premium or the equivalent irrespective of the actual premium earned by audit, reports or retrospective rating, as if the premium were fixed or
(b) the unpaid balance of the account applicable to the policy.

4.                ENDORSEMENT
(attached to Policy No. GA 1435505
on March 30, 1973)
The premiums on this policy have been financed by [Ray] through [Afco] under an agreement which specifies that default by [Ray] in payment to [Afco] for a designated period after the due date of any installment shall be deemed to be a request to [Afco] to notify [Reliance] of the cancellation of the policy by [Ray] in accordance with its terms. [Ray] agrees that *notice to [Reliance] by [Afco]* of the cancellation of the policy, stating when thereafter such cancellation shall become effective, shall be deemed to be cancellation of the policy by [Ray] in accordance with its terms.
. . .
It is further agreed that any return premium which may be due, upon the cancellation of the policy either by [Reliance] or by [Ray], or by [Afco] acting for [Ray], shall be payable by [Reliance] to [Afco].

ment to Afco with other funds. Ray borrowed some money from his son and, on August 20, paid Afco the July 26 installment.

Afco never received the installment which was due on August 26 and, in light of that fact, Afco on September 19 mailed to Reliance a "request for refund," which Reliance received on September 21. By that document Afco informed Reliance that Ray's premium finance agreement "has been terminated because of default" and that "the gross unearned premium should be forwarded to Afco promptly." That document also contained this language, "THIS IS NOT NOTICE OF CANCELLATION OF THE POLICIES."

On September 21 Reliance mailed to Ray a notice of cancellation of the instant policy, the notice stating that the effective date of cancellation was October 4, 1973. Reliance also cancelled the other policies.

On September 19, when Afco mailed Reliance the request for refund, Ray's indebtedness to Afco was $1,740.19 and the request informed Reliance of that fact. Afco was paid that amount out of the unearned premium on the cancelled policies, one of which was the instant policy. The balance of the unearned premiums was paid to Ray. Policy GA 1435505 included, in addition to its vehicle coverage, liability coverage with respect to other risks (excavation, wrecking, etc.). The latter coverages, rather than the automobile coverage, were the sources of unearned premiums.

Under Condition 11 of the policy, Reliance had the right to cancel.[5] Condition 11 prescribes the *manner* in which cancellation is to be effected by Reliance and appellants make no claim that the method which Reliance employed in effecting cancellation failed to conform with the manner prescribed. On the other hand, Condition 11 does not require a *reason* for cancellation

and the notice of cancellation, mailed by Reliance to Ray on September 21, did not state a reason.

"Policy provisions for cancellation, unless in conflict with the terms of an applicable statute,[6] are valid. . . . An unequivocal agreement contained in a policy, by which either party may cancel the contract, is binding between the parties, for the parties to a contract of insurance validly may contract as they please with respect to cancellation."

.    .    .    .    ..

"The validity of a provision for unilateral cancellation of the insurance policy is sometimes based upon the principle that since such termination was agreed to by both parties, the freedom of contract of the parties to make such contract as they choose extends to the right to provide for such manner of cancellation. So, it has been declared that the parties to an insurance contract may cancel it at any time by mutual consent, and, in the absence of statute, they may agree in advance that the contract made by them shall cease to be binding at any time at the option of either or both of them." Couch on Insurance, 2d, Vol. 17, § 67:45, pp. 417–418.

■ An insurer having a contract right to cancel a policy may do so without reference to the reason or motive underlying the cancellation. *Mass. B. & I. Co. v. Simonds-Shields-Lonsdale & Co.*, 226 Mo.App. 1071, 49 S.W.2d 645, 649[4] (1932); *Hartford A. & I. Co. v. Hartley*, 275 F.Supp. 610, 619[21] (1967); *Jablonski v. Wash. Co. Mut. Fire Ins. Co.*, 13 Ill.App.2d 499, 142 N.E.2d 170, 171[1] (1957); *Knutzen v. Truck Ins. Exch.*, 199 Wash. 1, 90 P.2d 282, 285[4] (1939); *Pearson v. General Cas. & Sur. Co.*, 107 N.J.L. 509, 154 A. 739 (1931); *Camp v. Aetna Ins. Co.*, 170 Ga. 46, 152 S.E. 41, 42[1] (1930); *Siegler v. New Amsterdam Cas. Co.*, 3 N.J.Misc. 1069, 130 A. 543, 544[3] (1925).

---

5. Other portions of Condition 11 gave Ray the right to cancel in a prescribed manner. Those portions are omitted from footnote 2.

6. Although some Missouri statutes (e. g. § 379.-110 to § 379.120 RSMo 1978—See also their repealed predecessor, § 379.202 RSMo 1969)

impose restrictions with respect to cancellation of certain types of insurance policies, appellants make no claim that those statutes affect the instant policy or the disposition of this appeal.

Couch on Insurance, 2d, Vol. 17, § 67:69, p. 433; Appleman, Ins. Law & Prac., Vol. 8, § 5011, p. 598; 43 Am.Jur.2d Insurance § 400, p. 445; 45 C.J.S. Insurance § 446, p. 80; Anno. 68 A.L.R. 1171.[7]

Appellants make five attacks upon the propriety of the trial court's finding that the policy was cancelled on October 4, 1973. Appellants' first contention is that the policy was purportedly cancelled for nonpayment of premium and in fact the premium had been paid in full in April 1973.

It is doubtless true that Reliance's cancellation was motivated by its receipt, on September 21, of Afco's "request for refund," but Reliance needed no reason to cancel. Indeed authority exists to the effect that Reliance's cancellation of the policy would have been effective even if based on misinformation.[8]

■ This court does not disagree with authorities cited by appellants to the effect that where cancellation rights may be invoked only in the event of nonpayment of premium, the insurer may not cancel if the premium in fact has been paid. The instant policy, however, contains no such restriction upon Reliance's right to cancel.

The mere fact that Reliance received full payment of the premium in April 1973 is no bar to its right to cancel. Indeed the policy itself provides for the return of unearned premiums in the event of cancellation, thereby recognizing that premium prepayment is not inconsistent with Reliance's right to cancel. See *Insurance Management, Inc. v. Guptill*, 16 Wash.App. 226, 554 P.2d 359, 364[8] (1976), where the court rejected the argument that prior receipt by the insurer of its premium in full deprived it of its right to cancel. Appellants' first contention has no merit.

■ Appellants' second contention, advanced without citation of authority, emphasizes an erroneous recital contained in the policy endorsement set forth in footnote 4. The endorsement recites: "The premiums on this policy have been financed . . under an agreement which specifies that default by [Ray] in payment to [Afco] shall be deemed to be a request to [Afco] to notify [Reliance] of the cancellation of the policy by [Ray] in accordance with its terms. . . ." Appellants point out that the premium finance agreement between Ray and Afco contains no provision which the underlined portion of the endorsement attributes to it. Thus, argue appellants, the "request for refund," received by Reliance from Afco on September 21, should not have been construed by Reliance as a request, on behalf of Ray, for cancellation. This argument has no merit.

The request for refund contained, in bold print, "THIS IS NOT NOTICE OF CANCELLATION OF THE POLICIES." The erroneous recital in the endorsement has no significance for the reason that Afco not only did not purport to cancel on behalf of Ray but indeed specifically informed Reliance that the request for refund was not a cancellation. The salient fact remains, however, that Condition 11 of the policy vested in Reliance the unrestricted right to cancel, in the prescribed manner, without regard to reason or for no reason at all. Although Reliance needed no justification for its cancellation, the fact that the request for refund necessitated the payment by Reliance to Afco, out of the unearned premiums, of Ray's indebtedness to Afco of $1,740.19 is an explanation, though none was needed, for Reliance's cancellation. Appellants' second contention has no merit.

■ Appellants' third contention, advanced without citation of authority, is that

**7.** In some unusual factual situations, not present here, courts have held that for particular reasons of public policy it may constitute a breach of contract for a liability insurer to invoke the cancellation provision. See 40 A.L. R.3d 1439.

**8.** "Where an insurer, because of the right arbitrarily to cancel a policy, is under no obligation to state grounds therefor in its notice of cancellation, a misstatement of grounds, or a statement of a cause based on a condition which does not exist, does not nullify the notice of cancellation, or render the cancellation inoperative." Couch on Insurance, 2d, Vol. 17, § 67:70, p. 434.

Reliance's cancellation was not "justified by the notice of advanced premium" set forth in footnote 3. With regard to the latter document, appellants say, "Reliance was not contractually bound or legally obligated to cancel the policies, and the notice of advanced premium does not, and does not purport to, confer that right upon Reliance." That statement is accurate but has no legal significance. Reliance's right to cancel stems from Condition 11 of the policy. It is true that nothing in the notice of advanced premium required Reliance to cancel, but nothing in that document or the other documents deprived Reliance of its right to cancel under Condition 11.

Appellants point out that the notice of advanced premium required Reliance to pay Afco an amount, calculated in accordance with paragraph A(1) of that notice, "if Ray fails to pay Afco and Afco requests refund." Appellants argue that although Afco did request the refund, Reliance did not know whether Ray had failed to pay Afco. The fact is that Ray had failed to pay Afco and the literal condition of paragraph A, triggering Reliance's duty to pay Afco, was met. All of this, however, does not alter the fact that Condition 11 of the policies vested in Reliance the unrestricted right to cancel and it did so.

Appellants say, "What if a dispute exists as to whether or not Ray has failed to pay Afco." The answer to that rhetorical question is that the existence of such a dispute or the resolution of it would not affect Reliance's right to cancel. Appellants' third contention has no merit.

[redacted] Appellants' fourth contention, advanced without citation of authority, is that Reliance was not "justified in purporting to cancel the policy for nonpayment of premium" in view of the amounts which Reliance, following cancellation, paid Afco ($1,740.19) and thereafter refunded to Ray ($1,946).

Appellants say: "Between January 25, 1973, the effective date of the policy, and October 4, 1973, the effective date of the purported cancellation, more than ⅔ of the policy period (12 months commencing January 25, 1973) expired. The only fair inference is that the premium was grossly miscalculated by Squibb and that, on September 21, 1973, Reliance, which had been paid in full in April 1973, had more than enough money on hand to refund to Afco the sum of $1,740.19 and still have enough to pay its correct premium in full."

Appellants have cited no authority, and this court has found none, to support the proposition that a miscalculation or over-estimate of a premium paid in advance affects or limits the contract right of the insurer to cancel a policy.[9]

Condition 1 of the policy, dealing with computation of premiums, provides for the crediting of an "advance premium" to the amount of the earned premium. Determination of the amount of the earned premium attributable to various coverages was based upon examination of Ray's records reflecting the extent of his operations during the audit period, including Ray's payroll records and "receipts." The policy provisions quoted in footnote 1 make it clear that the parties contemplated that computation of the earned premium would be made at the close of the policy period, which in this instance ended with the effective date of cancellation. Appellants make no claim that the earned premium was not computed accurately at that time, nor do they claim that Ray was not given full benefit of that computation.

Appellants' instant contention that Reliance was not "justified" in cancelling the policy overlooks the fact that Reliance's right to cancel was not conditioned upon its ability to justify its exercise of that right. Appellants' fourth contention has no merit.

[redacted] Appellants' fifth contention is based on the theory that the $576.73 check received by Squibb on August 8 should have

9. There was in fact no miscalculation of the premium with respect to that portion of the instant policy which provided automobile coverage. The unearned premiums, which were the source of Reliance's payment to Afco and the additional refund to Ray, stemmed from over-payments on other coverages.

been forwarded to Afco in payment of the July 26 installment and that Ray's subsequent payment of $576.73 to Afco on August 20 should have been treated as an advance payment of the August 26 installment. Accordingly, argue appellants, Afco should not have deemed Ray to be in default and Afco should not have mailed the request for refund to Reliance on September 19.

Appellants argue that Afco should be responsible, on the theory of agency, for Squibb's conduct in retaining the check which Squibb received on August 8. An argument premised on the theory that Squibb was Afco's agent is inconsistent with paragraph 9 of the premium finance agreement which states that Squibb is not the agent of Afco. The soundness of the agency argument need not be considered.[10] Reliance's exercise of its right to cancel was in no way contingent upon the legality or even fairness of Afco's conduct in sending the request for refund. Appellants' fifth contention has no merit.

Appellants' final contention, set forth in the last portion of their brief, need not be stated nor received because it fails to state "what actions of rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous," thereby violating Rule 84.04(d) V.A.M.R.

Respondent's motion to dismiss the appeal is denied.

The judgment is affirmed.

All concur.

---

10. The agency argument overlooks the fact that the trial court accepted the testimony of Gary Nickel that Ray himself agreed to Squibb's conduct in applying the August 8 check to Ray's open account with Squibb. Appellants' theory that Ray's subsequent payment should be considered as a payment in advance of the August 26 installment seems inconsistent with Ray's history of being late on all prior installments.