The HOME INDEMNITY COMPANY, a corporation, Plaintiff,

v.

The EMPIRE FIRE & MARINE INSURANCE COMPANY, a corporation, Defendant.

No. CV 80–49–M.

United States District Court, D. Montana, Missoula Division.

March 30, 1982.

William Evan Jones, Missoula, Mont., for plaintiff.

Richard R. Ranney, The Williams Law Firm, Missoula, Mont., for defendant.

## OPINION AND ORDER

RUSSELL E. SMITH, District Judge.

The facts are stipulated.

Jurisdiction exists by reason of a diversity of citizenship.

Pardue-Merriweather, Inc. (Pardue), a Montana corporation (the insured), was in the business of hauling grain [1] from points in Montana to points in Washington and, as a condition to the lawful use of Washington highways, was required to comply with the motor carrier laws of that state.

The trucks and trailers used in the business were insured by Empire Fire & Marine Insurance Co. (Empire) for the period May 24, 1979, to May 24, 1980. The dispute revolves around a purported cancellation of the policy. The policy contained a cancellation clause (Section 10) as follows:

> This policy may be cancelled by the named insured by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective .... The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.
>
> If the named insured cancels, earned premium shall be computed in accordance with the customary short rate table and

---

1. The agreed statement hints at this, and the briefs assume it. If the use of the word "grain" is incorrect, the parties may file exceptions within ten days.

procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

The history of the cancellation is this:

Prior to December 5, 1979, Pardue requested insurance broker Tabby Tabaracci, Inc. (Tabaracci), which represented both Empire and Home Indemnity Company (Home), to cancel the Empire policy and rewrite the insurance with Home. A document entitled "Cancellation Request/Policy Release," stating that the date of cancellation was December 5, 1979, at 12 noon, and that the cancellation method was "short rate," was mailed by Tabaracci on December 8th and received by Empire on December 10th.[2] On January 9, 1980, Empire issued a "cancellation ticket" showing the date of cancellation as December 5th, together with a check for the refund, purportedly[3] calculated on a percentage basis. In any event, however, if Section 10 governs, the policy was cancelled not later than December 10th because, under the express terms of Section 10, payment or tender of unearned premiums is not a condition to cancellation, although if Empire calculated the refund improperly it may still owe Pardue some money.

An endorsement attached to the policy on the date of its issuance provided the following:

It is agreed that:

1. The certification of the policy, as proof of financial responsibility under the provisions of any State motor carrier law or regulations promulgated by any State Commission having jurisdiction with respect thereto, amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law

or regulations to the extent of the coverage and limits of liability required thereby; provided only that the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in making such certification.

2. The uniform motor carrier bodily injury and property damage liability certificate of insurance has been filed with the State Commissions indicated on the reverse side hereof.

3. This endorsement may not be canceled without cancellation of the policy to which it is attached. Such cancellation may be effected by the company or the insured giving thirty (30) days' notice in writing to the State Commission with which such certificate has been filed, such thirty (30) days' notice to commence to run from the date the notice is actually received in the office of such Commission.

Pursuant to this the policy was certified in the State of Washington. The endorsement incorporated the requirement of the Washington law that the policy may be cancelled only on thirty days' notice.

On December 13, 1979, Home filed a certificate of insurance in Washington showing December 5, 1979, as the effective date of the policy.

On December 12, 1979, Pardue's truck was in an accident in Montana, and two actions were brought against the insured in Montana. Home settled both cases after having demanded that Empire participate in the defense and the settlement payments.

By this action Home asks that Empire be required to share on a fifty-fifty basis the costs of the defense and settlement. The Home position is this: By reason of the fact that Empire had certified its coverage in Washington, it was a requisite to cancella-

---

2. If Tabaracci was not an agent of Empire for notice of cancellation under the quoted Section 10, the cancellation was still effective not later than December 10th.

3. I use the word "purportedly" because, while in the refund calculation the days of coverage are correctly shown, the percentages of earned and unearned premiums seem to be inaccurate.

tion that the thirty-day notice required by Washington law be given. Since no notice of cancellation was filed in Washington at any time prior to the accident, the Empire policy was still in effect[4] and Empire and Home were jointly liable. Home buttressed this position with a letter from Empire to Tabaracci written on December 14, 1979, stating that, because of the thirty-day notice required by Washington law, it would be liable at least until January 16, 1980. The letter concluded with this paragraph:

> With the Home Insurance Company writing the business effective December 5 they are assuming the liability, but in order to do so they are to provide the Empire Insurance Company with the Hold Harmless accepting responsibilities effective that date. Please inform the insured to have his present new carrier affect a Hold Harmless and send to the Empire Insurance Company and we will process the cancellation effective December 5.

No such hold-harmless notice was ever executed.

The question is: Was the policy alive in Montana because of the Washington certification, or was it cancelled in accordance with the provisions of Section 10?

■ As a matter of simple justice,[5] Empire should not be liable. Pardue wanted Home to cover it after December 5, 1979, at noon. It accomplished this by cancelling the Empire policy, as it thought it could, and paying for a Home policy to replace it. Pardue did not intend to be a beneficiary of the policy limits of both Home and Empire. On the cancellation Empire did become liable for the premium refund whether it paid it in full or not. Home, which admits that it was liable as of December 5th at 12:01 P.M., was paid for assuming that liability. In short, as matters now stand, all of the concerned parties get just what they bargained for.

■ Legalisms do not require a contrary result. The Washington statutes make compliance with Washington law a condition of the use of Washington highways, and there is no indication that, even if it could, the Washington law should have extraterritorial effect.[6]

■ The insurance provided by the endorsement and certification was compulsory insurance, i.e., insurance which was required if the insured were lawfully to use the highways of Washington. While the policy does not use the words "compulsory" and "noncompulsory," it is noted that, where the policy is certified because of some special requirement of the law, the insured agreed to reimburse Empire for any loss it may sustain solely by reason of the certification.[7] Thus the policy does in fact distinguish between compulsory and noncompulsory insurance, and the following rule applies:[8]

> "Where a compulsory automobile insurance policy contains additional clauses providing for noncompulsory coverage, a cancellation of the policy will be effective as to the latter clauses even if it does not comply with the statutory requirements

---

4. There is no indication that liability or the lack of it is predicated upon a filing or nonfiling of a certificate under Montana law.

5. I assume that in Montana and the Ninth Circuit it is proper to use the word "justice" in a case involving an insurance company, at least if the only other party is an insurance company.

6. See Wash.Rev.Code Ann. §§ 81.80.010, 81.80.020, and 81.80.190.

7. A certification under the financial responsibility laws has language to the same effect as that quoted from the motor carrier endorsement. I note these reimbursement provisions solely for the purpose of indicating that the parties used words which distinguished the noncompulsory insurance afforded under the policy from the insurance afforded under endorsements providing for a compelled certification. It appears to me that, if Empire were liable for the loss in Montana, that would be due solely to the Washington endorsement and that the case differs from *Erie Insurance Exchange v. Gosnell*, 246 Md. 724, 230 A.2d 467 (1967), but I do not decide the matter.

8. *Edwards v. American Home Assurance Co.*, 361 F.2d 622, 626 (9th Cir. 1966), quoting a principle stated in Annotation, 171 A.L.R. 550, 554 (1947).

as to the cancellation of the compulsory insurance."

 Viewing the matter in a slightly different way, a similar result is reached. In the case of *Knutzen v. Truck Insurance Exchange*, 191 Wash. 1, 90 P.2d 282 (1939), a policy issued to Truck Insurance Exchange containing the statutory endorsement and filed with the Commission was cancelled by Truck Insurance Exchange in accordance with the other cancellation provisions of the policy. An accident occurred before notice to the Commission became effective. The insured paid the loss and sought to recover from Truck Insurance Exchange. The court said the following 90 P.2d at 285:

> The provisions of Laws of 1935, chapter 184, p. 890, § 16, with reference to liability and property damage insurance, were enacted for the benefit of the public; it is so indicated in the act itself. But, in this case, the rights of the public are not involved. The statute and its requirements never, in fact, became applicable to appellant and no liability or obligation against it ever arose thereunder. The fifteen-day notice, therefore, has no bearing upon the terms of the contract made between respondent and appellant.

> Whether the individual who was injured, or his legal representative upon the death of the injured person, could have invoked the statute or the attempted compliance therewith by appellant, is not now before us. This is solely a matter between the policy holder and the insurance company.

The Washington certification did not make the policy applicable to accidents occurring on Montana highways. The Washington law was not designed to protect persons using Montana highways. The rights of the public in neither Montana nor Washington were involved, and the matter should be treated as one "solely . . . between the policy holder and the insurance company."

The cases cited by Home are not persuasive here. In *Densmore v. Hartford Accident & Indemnity Co.*, 221 F.Supp. 652 (W.D.Pa.1963), the company gave a ten-day notice which would have been effective if the premium had not been paid, but twenty days' notice was required in cases where the cancellation was based on something other than failure to pay premiums. The court was not concerned with and did not pass upon any conflict between the law and the cancellation provisions of the policy. The case of *Utilities Insurance Co. v. Potter*, 188 Okl. 145, 105 P.2d 259 (1940), is not concerned with problems of cancellation.

The clerk is directed to enter judgment denying the plaintiff all relief.

